### GENERAL EXCHANGE INS. CORPORATION v. M. ROMANO & SON et al.
### No. 2010.

Court of Appeal of Louisiana. First Circuit.
June 30, 1939.
Rehearing Denied Sept. 5, 1939.

Barnett & Thurmon, of Baton Rouge, for appellant.

Johnson & Kantrow, of Baton Rouge, for appellees.

DORE, Judge.

This is an automobile collision suit wherein plaintiff in his petition alleges that on July 1, 1938, after 8 P.M., on the Airline Highway betwen New Orleans and Baton Rouge at a point 5 miles north of Reserve in St. John the Baptist Parish, one Armstead Phillips parked a Chevrolet truck (belonging to and driven for M. Romano & Son, a commercial partnership of Baton Rouge) in an awkward manner—that is by placing the front wheels on the wide shoulder just barely off the paved right lane in the direction of Baton Rouge, and the rear end at an angle and protruding 4 or 5 feet on the pavement; that the said truck was parked in such awkward position without flares or lights of any kind; that shortly thereafter D. K. Summers, while approaching the said parked truck from the rear, driving his 1938 Chevrolet sedan in the direction of Baton Rouge "in a prudent, careful and skillful manner at a moderate and reasonable rate of speed, approximated at or about 45 miles per hour, and (having) his car under full control", was "partially" blinded by the lights of a car being driven by one Samuel Fingers from the opposite direction at an excessive rate of speed and with bright lights burning, and ran into and collided with the left rear corner of the parked truck which projected onto the highway, the Summers' car thereby being knocked toward the center line of the highway where it was struck by the car operated by Fingers; that the accident was caused solely and approxi-mately by the negligence of Phillips in parking the truck on a much traveled public highway in the manner and under the conditions set forth; that as a result of the collision the Summers car was completely destroyed and demolished—the loss being $675 less $125 for salvage; that is, the sum of $550, to which petitioner, as insurance carrier and subrogee of Summers, is entitled to judgment with interest and costs.

An exception of no right and no cause of action was filed by the defendants and sustained by the lower court. The plaintiff has appealed.

In the case of Inman v. Silver Fleet of Memphis, 175 So. 436, this court came to the conclusion that, where the petition sets up a state of facts which affirmatively shows negligence in the plaintiff as the proximate cause of the accident, and where, if proved, the facts would not entitle plaintiff to recover, an exception of no cause of action should be sustained, as no purpose would be served by trying a useless and expensive lawsuit.

The cases of Louisiana Power & Light Co. v. Saia et al., 188 La. 358, 177 So. 238, and Goodwin v. Theriot et al., La.App., 165 So. 342, are to the effect that where the petition alleges that a motorist ran into an unlighted truck parked on the highway at night, without alleging conditions and facts to show that the motorist was prevented from seeing such truck, or facts which would tend to excuse his failure to see such parked truck, the petition shows contributory negligence on the part of the motorist as the proximate, or at least a contributing, cause of the accident, and an exception of no cause of action leveled against such a petition should be sustained.

In the cases of Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, and Blahut v. McCahil et al., La.App., 163 So. 195, it was held that where a motorist is blinded by bright headlights of an oncoming car, it is negligence for him to fail to slow down and bring his car under such control as to be able to stop for such a large and bulky obstruction in the highway as a truck parked thereon.

The cases of Stafford v. Nelson Brothers, 15 La.App. 51, 130 So. 234, and Hanno v. Motor Freight Lines, Inc., 17 La.App. 62, 134 So. 317, seem to be in conflict with the statement made above. It appears, however, that in those cases the court re-

lied on the sudden emergency doctrine, holding that the drivers who ran into the obstructions in the highway—an excavating machine in the former case and a parked truck in the latter—were confronted by a sudden emergency created by the appearance of these large obstructions which loomed up in front of them, and under this situation the drivers were not required to use the same clear judgment as would have been the case had there been no sudden emergency.

The rule that a motorist when blinded by bright lights of an approaching car must keep his car under such control as to be able to stop within the range of his vision, is applicable only in those cases where the bright lights appear at a sufficient distance away and in such a manner as to enable the motorist meeting the car with the bright lights to slow down and prepare for the situation caused by cutting off his vision, or impairing his view of the road ahead. The rule does not apply where the bright lights suddenly appear or loom up unexpectedly, as when the oncoming car suddenly rounds a curve, comes over the crest of a hill, or from out of a side road, or where the bright lights are suddenly flared into the face of the motorist. See Waters et al. v. Meriwether Transfer Co., Inc., 18 La.App. 18, 137 So. 578.

A motorist is not required to anticipate an unusual obstruction on the highway, such as a depression in the road, a wire across the road, small and unexpected objects that are not easily seen at night, and the motorist has a right to assume that there are no such unusual obstructions ahead of him. It was on this theory that the motorist who ran over a "small" dead yearling in the road at night was not deemed guilty of contributory negligence. Kirk v. United Gas Public Service, 185 La. 580, 170 So. 1, 3. But the court in that case held that a motorist should be able to see such a large object as a truck parked in the road, stating: "We do not think the rule stated can be extended so as to authorize an automobile driver to assume that the highway is not negligently obstructed in the face of a formidable physical obstruction [citing Blashfield]. But in this case the obstruction was not only not such an obstruction as an automobile driver would ordinarily anticipate to encounter in the road, but also was not such a formidable physical object such as he could or should have observed."

We admit that, as expressed by the Supreme Court in Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469, 470, "whether it should be deemed negligence for the driver of an automobile to fail to slow down, in a case like this, depends so much upon the circumstances of the particular case that it is not easy nor safe to lay down a hard and fast rule on the subject". Yet, applying these principles to the facts set out in the petition in this case, it will be seen that the bright lights of the approaching car did not suddenly flare or loom up in the face of Summers, but it is clearly alleged that these brights lights approached at a fast rate of speed and that Summers was only partially blinded by these lights. No facts are alleged to show any satisfactory reason for the failure of Summers to see as large an object right in his lane of traffic as a truck. It is true that the petition does allege that because of the angling position of the truck across the road, it was difficult to see. However, the fact that the rear part of the truck was out as far as the middle of the right traffic lane and the front part extended over onto the shoulder would give a motorist approaching from the rear a view of both the rear and part of the right side of the truck, and we cannot therefore see any merit in the contention that the awkard position of the truck had anything to do with the failure of Summers to see it.

The case that comes most nearly supporting plaintiff's claim that the exception of no cause of action should be overruled is the case of Coats v. Buie's Estate, La. App., 157 So. 560, not cited in the briefs. However, a careful reading of that case will show that the reason the Court of Appeal overruled the exception and remanded the case for trial was because of an allegation in the petition that the unlighted parked truck and trailer had a large iron coupling pole projecting far out behind the trailer. The truck was parked in an angling position across the highway, and the court said that it could not be determined without hearing testimony just what effect the projecting coupling pole had in producing the accident.

For the reasons assigned, we are of the opinion that the exception of no cause of action was properly sustained, and the judgment below is therefore affirmed.

LeBLANC, J., dissenting.