231 So.2d 448 (1970)
Noah DESHOTEL, Plaintiff-Appellee,
v.
TRAVELERS INDEMNITY COMPANY, Defendant-Appellant.
No. 2960.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1970.
Dissenting Opinion January 20, 1970.
Rehearing Denied February 4, 1970.
Writ Granted April 3, 1970.
*449 Davidson, Meaux, Onebane & Donohoe, by V. Farley Sonnier, Lafayette, for defendant-appellant.
Daniel J. McGee, Mamou, and Andrew Vidrine, Church Point, for plaintiffappellee.
Before TATE, HOOD and MILLER, JJ.
MILLER, Judge.
Noah Deshotel seeks damages from his liability insurer, Travelers Indemnity Company, for injuries resulting from an automobile accident which occurred in Acadia Parish on November 22, 1965. Deshotel was riding in the front seat of his automobile which was being driven by his sixteen year old unemancipated son who resided with him. Deshotel contends that his son's negligence was the sole proximate cause of the accident.
The trial court rendered judgment in favor of plaintiff in the amount of the $5,000 policy limits, together with legal interest from date of judicial demand and all costs.
Travelers perfected this suspensive appeal and here contends, as it did at trial, that (1) plaintiff's minor son was not guilty of negligence which constituted a direct or proximate cause of the accident, but on the contrary was presented with a sudden emergency; (2) alternatively, plaintiff was guilty of contributory negligence by virtue of his own independent negligence; and (3) plaintiff is contributorily negligent because under LSA-CC Art. 2318, the father's liability for the torts of his minor child attaches because he himself is guilty of fault in not having supervised his minor child sufficiently. Defendant contends that the father is not responding for the torts of another, but for his own act as he was himself at fault for not having supervised the minor with sufficient strictness.
Plaintiff and his son were the only two witnesses to testify, and their brief testimony was taken some three years after the accident. Plaintiff worked off shore and was returning to his home in Church Point. He rode with fellow employees to Eunice and was met about 2 a.m. in Eunice by his son who was spending the night at a relative's home. When Deshotel arrived, the relatives got up and visited over coffee for about an hour and a half. At about 4 a.m., Deshotel and his son departed for Church Point.
Deshotel's son was driving about 50 miles per hour on a straight and level blacktop highway which was "pretty rough" and was paved to a width of about 18 feet. There is no evidence concerning the width or condition of the shoulders of the highway. In the process of crossing the other car on the highway, Deshotel's son allowed his car to drift slightly to the *450 right and when the right wheels edged off the blacktop he lost control of the car, swerved across the road, and wrecked in the ditch on his left side of the road.
Ronald (the driver) noticed a car coming toward Eunice when "it was pretty far off." On direct examination he explained that the oncoming car had its lights on bright. "* * * I asked him to dim them and I tried to keep on my side of the road and I went off and cut right back toward the road (indicating) and I lost control and that is when I landed in this gully" (on the driver's left side of the road). Tr. 82, 83. On cross-examination, he testified that his lights were on dim and the oncoming car's lights were on bright; that he did not know how far he was from the oncoming car when the lights first blinded him. With some reluctance he estimated this distance to be "about two blocks, I guess."
"Q. When it first started blinding you what did you do?
A. Well, I tried to see the road and that's whenI don't knowthat's when I went off the road and then on the other side.
Q. Okay. Then, you pulled off onto the right side of the road?
A. Yes, sir."
* * * * * *
"Q. About how far would you say you travelled from when you pulled off the pavements onto the shoulder until you ended up in the ditchabout how far was that distance?
A. Well, you see I went off the road and then I tried to bring it back right away and that's when I got in the gully."
* * * * * *
"Q. You never slowed down?
A. Yes, sir. I let up my foot off the accelerator when I hit the shoulder.
Q. Now, your father never told you to slow down or stop, did he?
A. No, sir."
On direct examination, Deshotel testified that he didn't know how the accident happened." * * * I saw this car coming and when I knew something the car was in the coulee." Tr. 93. But on cross-examination, he stated:
"Q. Did you notice whether its lights were on bright or dim.
A. Well, when I saw it, it was on bright and the young boy asked him for his dimmers and he gave him dim and he gave him bright. He went from bright to dim and right back to bright."
Deshotel estimated that they were only 50 steps away from the oncoming car when "he gave us brights" and it blinded Deshotel, too. Tr. 102. After that Deshotel's son "pulled to the right and well, he lost control." Tr. 102.
"Q. You never told your son to slow down or stop when you got blinded?
A. No, it was too quickly done."
Plaintiff contends that Deshotel had no opportunity to do anything in the way of direction to the driver which could have prevented this accident. Defendant argues that Deshotel was bound to tell his son to slow down because the oncoming lights were blinding them.
Travelers' first assignment of error that Deshotel's son was not negligent is based on two principles. First, Deshotel is bound by his testimony which is in effect a judicial confession that exonerates his son from negligence. Secondly, that under Deshotel's version of the accident, his son was confronted with a sudden emergency and is therefore free from negligence.
Travelers argues that under LSA-CC Art. 2291, if the testimony of plaintiff is consistent, even though it is contrary *451 to the physical facts or other testimony, it is a judicial confession against that particular plaintiff. Therefore, Travelers submits, although the physical facts and the other testimony may show that Ronald Deshotel may have been guilty of negligence which was a proximate cause of the accident, Deshotel's testimony and the provisions of the Civil Code article exonerate Ronald Deshotel and Travelers, as his insurer, from any liability. Franklin v. Zurich Insurance Company, 136 So.2d 735 (La.App. 1 Cir. 1962).
This holding was expressly rejected by the Supreme Court in Jackson v. Gulf Insurance Company, 250 La. 819, 199 So.2d 886 (1967), in the following language:
"A judicial confession under Article 2291 is a party's admission, or concession, in a judicial proceeding of an adverse factual element, waiving evidence as to the subject of the admission. A party's testimony is offered as evidence, not as a waiver of it. To be an effective agency of truth, the trier of fact must be allowed to weigh the disserving testimony of a party, as well as other evidence. When the truth is found elsewhere, the party's disserving testimony must yield in order to achieve the ends of justice." 199 So.2d 886, 891.
Travelers contended that Deshotel's testimony that the oncoming lights were flashed to bright when the cars were but fifty steps away, makes applicable the jurisprudence that if bright lights are brought suddenly into view and there is no time between the appearance of the bright lights and the happening of the accident to observe the necessary rules of caution with regard to stopping and pulling to one side, the driver of the automobile cannot be charged with negligence for not stopping. [Citing Waters v. Meriwether Transfer Co., 18 La.App. 18, 137 So. 578 (2d Cir. 1931); Watkins v. Strickland Transportation Company, 90 So.2d 561 (La.App.2d Cir. 1956); Noland v. Liberty Mutual Ins. Co., 89 So.2d 428 (La.App. 1 Cir. 1956); Fontenot v. LaFleur, 124 So.2d 607 (La.App.3d Cir. 1960); Suire v. Winters, 233 La. 585, 97 So.2d 404 (1957); Watts v. Spikes, 60 So.2d 242 (La.App. 1 Cir. 1952); General Exchange Ins. Corp. v. M. Romano & Son, 190 So. 168 (La. App. 1 Cir. 1939).] The sudden emergency with which the "blinded" driver was confronted in each of these cases was another vehicle parked in or blocking the highway. The "blinded" driver in this case was not confronted with any object which blocked or interfered with his proper use of his lane of traffic. Furthermore, the quoted principle of law applies to the "sudden" appearance of bright lights. Deshotel testified that the lights only flashed to dim and immediately back to bright. This cannot be considered to be a sudden appearance of bright lights which created a sudden emergency.
Traveler's second assignment of error is based on the combined testimony of Deshotel and his son. Defendant contends that the father was negligent for failing to require his son to reduce speed when the oncoming vehicle's headlights became blinding. It was proved that there was no reduction in speed until Deshotel's car reached the right shoulder of the road, and Deshotel did not suggest that the speed should be reduced.
The speed limit on this road was 60 miles per hour. Ronald's estimate (at best, a reluctantly given guess) of the distance between the two vehicles when the bright lights first started blinding him was "about two blocks." There is no estimate of the speed of the oncoming car, but for purposes of considering the rapidity at which the two vehicles were closing, it is not questioned that the other vehicle was moving. A distance of "about two blocks" will be approximated at 600 feet. At 50 miles per hour, a vehicle travels 73 feet per second. If both vehicles were traveling 50 miles per hour, the 600 feet distance between the two vehicles would be closed within approximately four seconds.
*452 LSA-R.S. 32:322(B) requires that headlights be dimmed when vehicles are 500 feet apart. If each vehicle was traveling 50 miles per hour, the distance of 500 feet between the two vehicles would be closed in less than three and one-half seconds.
If the normal approach of an oncoming vehicle with its headlights on bright is an emergency, we do not find that Deshotel was negligent in failing to recognize the emergency and give meaningful instructions within the one or two seconds (at most) which were available to him. The cases cited by Travelers are distinguished on that basis. In Buquet v. St. Amant, 55 So.2d 645 (La.App.Orls.1951), the owner passenger was showing the driver how to use the overdrive and the driver was in the wrong traffic lane. In Barnebey v. Northwestern Mutual Insurance Co., 186 So.2d 658 (La.App.2d Cir. 1966) the owner guest passenger was contributorily negligent for riding with a drunk driver at high speeds in an effort to outrun the police. In Mansur v. Abraham, 164 So. 418 (La.App. 1 Cir. 1935) the driver was driving in the middle of the road, and while blinded by an oncoming car the driver ran into an unlighted truck blocking his traffic lane. While the Court held that the owner passenger was contributorily negligent for failing to demand that the driver slow down or stop "when blinded or about to be blinded", the court held in the same sentence that the owner passenger's negligence also consisted of failing to demand that the driver return to his proper lane of traffic.
Finally, defendant contends that under the provisions of LSA-CC Article 2318, the father is not responding for the acts of the minor vicariously, but on the contrary, for his own act, as he himself is guilty of fault for not having properly supervised, with sufficient strictness, his minor child. The argument is made that when the father is responsible for the torts of his minor child under the provisions of LSA-CC Article 2318, the father is responding for his own fault in not having supervised his minor child sufficiently. The father, therefore, is guilty of fault which constitutes a direct and approximate cause of the accident and which bars recovery.
The issue thus presented is whether the responsibility of a father for the tort of his minor child is, as defendant argues, liability NOT for the tort of the minor but liability for the "presumed tort" of the father in failing to properly train or supervise his minor child.
Defendant's position is that the parent's responsibility for the tort of his minor child in not vicarious liability. Instead, the parent's responsibility is attributed to the independant fault of the parent for his failure to properly supervise the child. The reason defendant had to adopt this position is that while the Civil Code makes certain parties responsible for the torts of others (masters for their servants, employers for their employees, etc.), and bars these parties from recovering damages against a third party of his servant or employee was contributorily negligent, nevertheless this party is entitled to recover his OWN damages from the negligent servant or employee for whose torts he is responsible.
The argument that the father's responsibility for the act of his minor child is something other than vicarious responsibility for the minor's tort, is based primarily upon a quotation from the French Commentator Planiol which has been referred to in several Louisiana decisions. These references were not elaborated upon and were not cited for the purpose of supporting the theory presently urged by defendant. In each of the cited opinions, [Coats v. Roberts, 35 La.Ann. 891 (1883); Cleveland v. Mayo, 19 La. 414 (1841); Succession of Burns, 199 La. 1081, 7 So.2d 359 (1942); Toca v. Rojas, 152 La. 317, 93 So. 108 (1922); Watkins v. Cupit, 130 So.2d 720 (La.App. 1 Cir. 1961); Redd v. Bohannon, 166 So.2d 362 (La.App.3d Cir. *453 1964); Mullins v. Blaise, 37 La.Ann. 92 (1885); Kern v. Knight, 13 La.App. 194, 127 So. 133 (1 Cir. 1930); and Speziale v. Kohnke, 194 So.2d 485 (La.App. 4 Cir. 1967)] the court upheld what has long been the established lawthat the parent is responsible for the tort of his minor child. In no case was the independent negligence of the parent, presumed or actual, in the sense here contended for by defendant, at issue.
Article 2315, being the touchstone of tort liability in Louisiana, and Articles 2317-2322 being extensions of Article 2315, the principles of codal and statutory construction dictate that a reading of the relevant three articles in sequence will place Article 2318 in its proper perspective:
"ARTICLE 2315. Every act whatever of man that causes damage to another obligates him by whose fault it happened to repair it. * * *" (emphasis added)
"Article 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." (emphasis added)
"Article 2318. The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. * * *"
Articles 2317 and 2318 are extensions of Article 2315. In addition to being responsible for one's own acts which cause damage to another, one is also responsible for the acts of a person or thing for whom or for which one is answerable which causes damage to another. It necessarily follows that under Article 2318, a father is vicariously liable for the damage occasioned to third persons by the torts of his minor children who are unemancipated and are living with him at the time.
Articles 2317 and 2318 are concerned with the rights of third persons and have no applicability to this case where the Court is not concerned with the rights of third persons. Article 2318 is applicable where the rights of third persons are concerned; i.e., where the father is suing a third person on a cause of action resulting from the concurrent or contributing negligence of his minor child, or where a third person is suing a father on a cause of action based on the negligence of his minor child. In the first case, the negligence of the minor child is imputed and bars the father's right to recover against the third person, and in the second case, the negligence of the minor child is imputed to the father, rendering him liable to third persons for the negligence of his child.
The parent who is held liable to a third person for his minor's negligence has recourse over against the person who has charge of his minor. If the parent's liability were based upon the parent's own fault, he could not recover his loss from that other person.
Defendant relies on Planiol, Traite Elementaire de Drott Civil, Vol. 2, Part 1, Section 909, Pages 507 and 508, where the author is discussing Article 1384 of the Code Napoleon.
"Minors are personally responsible, as soon as they attain the age of discernment, at least for their serious faults (debts and quasi-delits.) See what is said in connection with Article 1310 (supra No. 879.)
But this responsibility does not always exist, and when it exists, it is quite often illusory, because most minors have no property. Also, minors are not independent: They are under the surveilance of others; it is therefore just that someone should be responsible besides them and for them. In truth, responding for *454 the act of a minor is not responsibility for the act of another, but for one's own act; a person is himself at fault, for not having supervised with sufficient strictness the minor confided to his care. He responds therefor, for his personal fault, and at least insofar as it concerns minors, Article 1384 is not a derogation from the principle, but rather an application of personal responsibility for faults."
In Section 910, Page 508, he states:
"The person responsible for the acts of minors by reason of a legal presumption of fault are the following:
(1) Father and Mother. It is the father who is primarily responsible; the mother is responsible only on his default, when the father is dead (the only case foreseen by the law), and by assimilation, when he is insane, or absent." * *
This quotation is not applicable to Louisiana because our article 2318 which in part stems from Code Napoleon Art. 1384, does NOT limit the parent's liability for damages caused by his minor to situations where the parent cannot prove his inability to prevent the act. As Justice Barham points out in his concurring opinion in Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968) at 147, "The distinction between the French and Louisiana law is that the former creates a legal presumption and the latter imposes absolute liability." While a parent may, in France, avoid liability to a third person who sustained damages due to his child's negligence if, the parent shows that he could not have prevented the negligent act, a parent in Louisiana may not avoid such liability to others by showing that he could have prevented his minor's negligent act because in Louisiana the parent's liability for his minor's tort has nothing to do with his own negligence (actual or presumed) but it is absolute liability arising out of the parent-child relationship. Specifically, the parent is vicariously liable.
And this difference in the codal articles is the basis for Planiol's writing (concerning the Code Napoleon) that in France a parent is responding for his OWN wrong. For if he can escape liability despite his minor's negligence by showing his own freedom from negligence (no opportunity to prevent the negligent act of his son), then, when he cannot show this it is because of his own negligence that he is liable. He has failed to prevent the negligent act which he could have prevented.[1] The vastly different basis of liability between the French and the Louisiana articles makes the quotation from Planiol inapposite to an interpretation of Article 2318.
Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968) expressly held that the liability of the parent is vicarious.
"We think the liability of the parent under these articles (CC Art. 237, 2318) is vicarious and if the child is old enough to be capable of fault and is in fact at fault, the liability of the parent is fixed; provided, of course, the minor is residing with the parent at the time." 214 So.2d 138, 143 (emphasis added).
It is noted that the Supreme Court refers to the same French Commentator cited by the defendants, and the same discussion is referred to (and quoted in the concurring opinion), but yet the court characterizes the liability as vicariousas distinguished from liability for one's own fault.
The dissent (and concurrence) by Justice Hamlin, which also cites and quotes from Planiol reasons that the father in Williams should not be held liable despite *455 the negligence of his minor son living with him. The dissent (and concurrence) by Justice Sanders also expresses doubt as to the father's liability for the damages of another at the hands of his minor child much less was there the question of the father's own "presumed" negligence as here urged by defendant.
If this accident had involved another driver-tortfeasor, who would have been a co-tortfeasor with plaintiff's son, then plaintiff would be barred from recovering against the other tortfeasor as well as the other tortfeasor's insurer because of his son's negligence. But this does not bar the father's recovery against the son's insurer. And, if another vehicle had been involved without negligence of the other driver (the son being the sole cause), then plaintiff would be responsible in damages to the third person but could nevertheless recover his own damages from the son's insurer. This is the law in all situations in which one is vicariously responsible for the tort of another and has sustained damages himself from his agent's negligence. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
The language of the Civil Code Articles resolve this issue. Article 2315 refers to damage "to another" and not "to one's self." Article 2317 refers to damages occasioned "by the acts of persons for whom we are answerable" as opposed to liability for our own acts. Article 2318 refers to responsibility for the "damage occasioned by our minor or unemancipated children" and not "by our own act or failure to act, in supervision, which results in damage to another because of our act or failure to supervise." Additionally the article provides for "recourse" against those persons in whom the care of our children has been placed. This would not be allowable if the failure of the parent to supervise or instruct the child would make the parent (actually or constructively) independently negligent.
The judgment of the trial court is affirmed. All costs of this appeal are taxed to defendant appellant.
Affirmed.
HOOD, Judge (dissenting).
The judgment rendered by the majority in this case is in direct conflict with the decision which we rendered on October 30, 1969, in Funderburk v. Millers Mutual Fire Ins. Co. of Texas, La.App., 228 So.2d 169.
In Funderburk, the plaintiff's minor daughter was injured in a motor vehicle collision involving an automobile owned by her father, in which car she was riding as a passenger. The car was being driven by plaintiff's minor son at the time the collision occurred, and the negligence of young Funderburk was the sole cause of the accident. Plaintiff instituted suit, individually and in behalf of his daughter, against his own insurer to recover damages for the account of his daughter and also to recover the damages which he sustained individually for medical expenses incurred in treating his daughter's injuries. The trial court rendered judgment for plaintiff in behalf of his daughter, but it rejected his individual claim for damages on the ground that the son's negligence was imputed to the father barring the latter from recovering. We affirmed the decision of the trial court, and in doing so, we said:
"We also affirm the trial court's judgment that the negligence of plaintiff's minor son is imputed to plaintiff so as to prevent him from recovering from his own insurer medical expenses incurred in connection with the care and treatment of his minor daughter.
"It has consistently been held that a father cannot recover medical expenses incurred on behalf of a minor child residing with him where he, himself, is *456 guilty of negligence or where negligence of another is imputed to him by law. * * *"
Plaintiff applied for writs in the Funderburk case, but his application was denied by the Supreme Court on January 9, 1970, the court assigning as its reasons for doing so that "The judgment of the Court of Appeal is correct."
We based our decision in Funderburk on Art. 2318 of the Louisiana Civil Code and on the case of Joffre v. Ike Haggert Machine Works, 100 So.2d 557, (La.App.Orls. 1958). In Joffre the Orleans Court of Appeal held that the father could not recover individually for his own losses occasioned by the accident, because his minor son's negligence was by law imputable to him. In so holding, the court said:
"Nor can Melvin L. Joffre, the father and tutor, recover individually and for his own losses occasioned by the accident as his minor son's negligence is by law imputable to him. It is settled jurisprudence that the contributory negligence of an unemancipated minor who lives with him precludes the father from recovery for his damages. * * *"
In the instant suit, as in Funderburk, the father seeks to recover from his own insurer the individual losses which he sustained as the result of the negligence of his minor son who was riding with him. In Funderburk we held by a unanimous decision that the minor son's negligence was imputed to the father, barring the latter from recovering for his own losses. In the present suit, the majority has reached a conclusion which is directly contrary to the decision rendered in the earlier case.
The majority apparently considers the liability of the father for the acts of his minor child to be analogous to the liability of a principal for the acts of his agent, or the liability of an employer for the acts of his employee. They reason that since a principal can recover in tort from his agent a father can recover damages from his minor son. I do not draw any such analogy. In the first place, the liability which exists in a principal-agent relationship is created by contract, and the right of the principal to recover from the agent is based essentially on a violation of that contract. The liability of the father for the acts of his minor child is created by statute (principally by LSA C.C. Arts. 237 and 2318), and the minor owes no contractual duty to the father. Unlike an agent or an employee, the minor child cannot quit the paternal house (LSA C.C. Art. 218). He remains under the authority of the father until his majority, whether he wants to or not, and until that time he is bound to obey his father in everything which is not contrary to good morals and the law (Art. 217). The law places an obligation on the father to support, maintain and educate his child, and it requires the child to maintain his parents who are in need (Arts. 227 and 229). No such obligations exist between principals and agents or between employers and employees. These statutory provisions are significant in that they show that the law intends for the relationship between the father and child to be something far different from the contractual relationship which exists between a principal and agent. It would be inconsistent, I think, to permit a father to sue in tort and to recover damages from his minor child, and at the same time to require the father to support, maintain and educate the child.
The law also provides that fathers and mothers shall have, during marriage, the enjoyment of the estates of their children until their majority or emancipation. LSA C.C. Art. 223. If the majority opinion in this case stands, then it necessarily follows that a father may sue his minor child in tort and may recover damages from him at any time the father sustains a loss resulting from the negligence of the child. Does this mean that when such a judgment is obtained the father can execute on the very property he supposedly is administering for the child? When the father has a tort claim against his young *457 child, should the father thereafter be disqualified from administering the child's estate? Who looks after the minor's estate after the father acquires an interest which is adverse to that of the child? I don't think the law contemplates that the father can recover damages from his minor child under any circumstances.
My colleagues have concluded that the comment in Planiol, Traite Elementaire de Droit Civil, Vol. 2, Part 1, Section 909, is not applicable in Louisiana. I do not agree. Article 2318 of our Civil Code had as its source the corresponding article of the French Code. The principal difference between the French law and our law on this subject, as I see it, is that in Louisiana the liability of the parent for the act of his minor child is more fixed and unqualified than it was in France. In Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934), our Supreme Court appropriately commented:
"In France, as we have said, the parental authority itself makes the parent responsible for a tort committed by his minor child, unless the parent proves that he was unable to prevent the act that caused the damage. Because of that limitation on the responsibility of the parent for an injury done by his minor child, the age of the child is a matter of no importance in such a case. But, in Louisiana, the parent is responsible for a tort committed by his minor child, even though the parent could not have prevented the act that caused the injury. Because of that unqualified responsibility of the parent for a tort committed by his minor child, in Louisiana, the liability of the parent for an injury willfully inflicted by his minor child depends upon whether the child is old enough to be legally capable of committing a tort."
In the instant suit the majority bases its decision largely on the fact that the Supreme Court used the term "vicarious" in the case of Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968). Because of the use of that word, they have reasoned that the relationship between the father and minor child is analogous to the relationship between a principal and his agent. The Williams case did not involve a claim by a father against his own minor child, and thus the issue presented here was not considered by the court in that case. The doctrine of the last clear chance was applied, so it was unnecessary for the court even to consider whether the father was barred from recovery against third parties by the contributory negligence of his minor son. The Williams case thus is not apposite to the issue presented here. I apparently do not place the same meaning on the word "vicarious" as do my collegues, and I do not believe that our Supreme Court by using that word intended to insert some dicta in the case which would have the far-reaching effect which the majority in this case is attempting to give that word. In any event, I do not interpret the Williams case as holding that a father may recover damages from his minor child in the same manner as a master may recover from his servant.
In my opinion, the provisions of LSA C.C. Art. 2318 were correctly applied in the Funderburk case. I feel that the majority has erred in tacitly overruling that decision in the instant suit.
For these reasons, I respectfully dissent.
ON APPLICATION FOR REHEARING
En Banc.
PER CURIAM.
The majority decision is in conflict with Funderburk v. Millers Mutual Fire Insurance Company of Texas, 228 So.2d 169 (La.App.3d Cir. 1969). However, the present decision is correct and the application for rehearing is denied.
Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] If Louisiana were to adopt the French law on this point, this parent would still not be barred from recovery in this case. A parent could then escape liability by showing that he could not have prevented his child's tortious act. The evidence here shows that the father had no opportunity to prevent the loss of control of the automobile.