DOUCET, Judge.
This suit arises out of an incident which occurred on May 15, 1985, when Jeff Le-Blanc’s nose was broken when he was struck in the face by Odell Baker, Jr. Both were minors and students at S.J. Welsh Middle School in Lake Charles at the time of the incident.
Suit was filed by Jeff’s father, Floyd J. LeBlanc, Jr. (appellant). Named as defen *1340 dants were Gerald and Patsy Phillips and Allstate Insurance, the Phillips’ homeowners insurer. LeBlanc urged that the Phillips were liable because at the time of the incident, they had the legal care, custody, and control of Odell Baker, Jr. Additionally, LeBlanc asserted that the Phillips were liable because they were guilty of independent acts of negligence in failing to properly train and discipline Odell and keep him in the school’s behavioral disordered class.
Mr. and Mrs. Phillips filed a motion for summary judgment on the basis that they were not the tutors or administrators of the estate of the minor, Odell Baker, Jr., and were therefore not legally liable for his acts. Summary judgment was granted by the trial court. Specifically, the court held that the Phillips, as the “legal custodians,” were not legally liable for the minor’s acts either under La.C.C. art. 237, La.C.C. art. 2318, or as a result of independent acts of negligence on their part. It is from this judgment that LeBlanc appeals.
In appellant’s first assignment of error, he urges that “The trial court erred in holding that Gerald and Patsy Phillips, as 'legal custodians’ of the minor Odell Baker, Jr., are not legally liable for damages occasioned by the said minor under the provisions of Civil Code article[s] 237 and 2318.” We disagree.
Gerald and Patsy Phillips were awarded legal custody of Odell Baker, Jr. by judgment of the Fourteenth Judicial District Court, under Juvenile Docket No. 6311, on December 9, 1983. Odell had been adjudicated delinquent and was on probation and supervised regularly by the juvenile probation office. There has been no tutorship proceeding by which the Phillips have become duly constituted tutors.
The Louisiana Civil Code states generally that parents are liable for the tor-tious acts committed by their minor children.
La.C.C. art. 237 provides:
“Fathers and mothers are answerable for the offenses or quasi-offenses committed by their children, in the cases prescribed under the title: of Quasi-contracts, and of offenses and Quasi-offenses.”
La.C.C. art. 2318 further states:
“The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors.”
In the instant case, it is undisputed that Odell’s father is deceased. His. mother, therefore, would be liable under La.C.C. art. 2318. LeBlanc, nevertheless, argues that Odell’s mother would not be liable for Odell’s offense since the Phillips had legal custody of him at the time of the incident. LeBlanc asserts that liability does not attach to the parent, if the child does not reside with him when the damage to another occurs or if the parent has lost custody of the child. This blanket statement, however, is misplaced as is evidenced in Flannigan v. Valliant, 400 So.2d 225 (La.App. 4th Cir.1981). In this case, a minor was in custody of his mother pursuant to a divorce decree. The minor, however, was not residing with his mother. The minor had lived for a short period of time with his father and then moved in with a friend. In Flcmnigan, supra, the court stated that:
“With respect to the case before us, we find that the liability of the father for the tortious acts of his minor son was suspended by virtue of the 1970 divorce decree which awarded the custody of Wayne to his mother.”
The court further stated:
“However, we reach the opposite result with respect to the mother. Since she had legal custody of the minor son at the time of the alleged battery she had parental liability for the son’s tortious acts. The fact that Wayne resided outside of the mother’s abode does not relieve her of that liability.” (Emphasis added.)
*1341 This principle was stated even more strongly in Audubon Ins. Co. v. Fuller, 430 So.2d 343 (La.App. 3rd Cir.1983). In Audubon, the court made the following statement:
“On appeal appellant argues that since the minor son was living with his father under his care and supervision at the time of the alleged incident the father should also be vicariously liable under LSA-Civ.Code arts. 237 and 2318. We disagree. The parent’s liability under art. 2318 is vicarious and his liability is not based upon the presumption of fault for having failed to properly supervise and train the minor. Deshotel v. Travelers Indemnity Company, 231 So.2d 448 (La.App. 3rd Cir.1970), affirmed [257 La. 567] 243 So.2d 259 (La.1971); and Deshotel v. Casualty Reciprocal Exchange, 350 So.2d 283 (La.App. 3rd Cir.) writ denied 352 So.2d 1037 (La.1977).
******
“.... we agree with the decision of the trial court to the extent that the responsibility of the custodial parent under art. 2318 remains fixed irrespective of the actual residence, and that the parental responsibility under art. 2318 of the noncustodial parent has been suspended by the force and effect of law regardless of the actual residence of the child.” Audubon Insurance Company, supra 345, 346.
Moreover, in Deshotel v. Casualty Reciprocal Exch. (La.App. 3rd Cir.1977), 350 So.2d 283, the court made the following analysis:
“We hold that the responsibility of the father under Article 2318, where it has not passed to the mother, remains fixed irrespective of actual residence, and liability continues with the only exception being those cases where the State has exercised its sovereign right and power and has superseded parental authority. In such cases the authority and liability of the parent is suspended. Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968).”
In light of the foregoing authority, it is evident that the assignment of liability rests on the effect of the state’s power in making such an assignment as between the parents in domestic proceedings. Thus, in the instant case, the question becomes whether legal custody as awarded under the authority of the juvenile court makes such a suspension of parental authority. We find that it does not.
La.R.S. 13:1569(11) which defines “legal custody,” expressly states that rights granted under the statute are “all subject to the powers, rights and duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities_” (Emphasis added.) A reading of the express language of this statute makes it clear that it does not intend to terminate or suspend parental rights and responsibilities on the basis of transfer of custody by the juvenile court.
In addition to the express language of the statute, further, support for the proposition that legal custody, as awarded under the authority of the juvenile court does not operate to suspend parental authority can be found in Green v. State of Louisiana, 91 So.2d 153 (La.App. 1st Cir.1956) wherein Judge Tate, speaking for the court, stated that the mere transfer of custody to an authority did not operate as a transfer of legal liability “absent a tutorial relationship.” As previously stated, there has been no tutorship proceeding by which the Phillips have become duly constituted tutors. Further, in Opelousas Scrap v. Foster Homes Program, 525 So.2d 1144 (La. App. 3rd Cir.1988) at 1146, we stated:
“Liability pursuant to article 2318 extends only to ‘fathers’ ‘mothers’, and ‘tutors’ and then only for the acts of ‘their’ minor or unemancipated children residing with them or placed by them in the care of another. We do not believe that the State, even though it had ‘legal custody’ of the minors, or Beadle, who was the ‘foster’ parent and possessed physical custody, may be held strictly liable. La. *1342 R.S. 13:1569(11) (1950) (amended 1972); La.R.S. 46:51(8) (1950) (amended 1978); Smith v. State, Division of Family Services, Department of Health and Human Resources, 452 So.2d 388 (La.App. 3rd Cir.1984).
Neither the salient language of art. 2318 nor the theory underlying its enactment suggests that either the State or a foster parent may be found strictly liable for the acts of minor foster children. The State and foster parents ordinarily lack the opportunity to nuture and direct the lives of foster children in the same respect a parent or tutor may.”
Pursuant to the express language of La. R.S. 13:1569(11), Green, supra, and Opel-ousas Scrap, supra, we find that legal liability did not transfer to the Phillips, but remained with Odell’s mother. Thus, we find that the trial court did not err when it made such a finding.[1]
In appellant’s second assignment of error, he asserts that “The trial court erred in holding that Gerald and Patsy Phillips, as ‘legal custodians’ of the minor, Odell Baker, Jr., cannot be held legally liable to third parties for failure to comply with the responsibilities imposed upon them under Louisiana Revised Statute 13:1569(11).” Specifically, appellant cites three specific areas of negligence on the part of the Phillips. This court will address each of these allegations by utilizing the duty-risk analysis, an approach adopted by this state in assessing allegations of negligence. Under the duty-risk analysis, “To hold the defendant liable for his negligence, each of the following questions must be answered in the affirmative: 1) Do the risks and harm encountered by plaintiff fall within the protection of a legal duty owed to plaintiff by defendant; 2) Was defendant negligent, i.e., did defendant breach the duty owed to plaintiff; 3) Was defendant’s action a cause-in-fact of plaintiff’s injury; and, 4) Was plaintiff damaged by defendant’s conduct?” Dixie Drive It Yourself Sys. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). Shatoska v. Whiddon, 468 So.2d 1314, 1319 (La.App. 1st Cir.1985).
Appellant first attempts to establish negligence on the part of the Phillips by stating that the couple failed to properly train and discipline Odell as required under the provisions of La.R.S. 13:1569(11).
The initial inquiry of the duty-risk analysis is whether the risks and harm encountered by plaintiff fall within the protection of a legal duty owed to plaintiff by defendant. We answer this in the negative.
At the outset, we note that Louisiana Courts have persistently recognized that parental liability is not predicated on negligence or fault for failure to train a minor. Deshotel v. Travelers Indemnity Company, 231 So.2d 448 (La.App. 3rd Cir. 1970), affirmed 243 So.2d 259 (La.1971); Deshotel v. Casualty Reciprocal Exchange, 350 So.2d 283 (La.App. 3rd Cir.), writ denied 352 So.2d 1037 (La.1977). Appellant, nevertheless, asserts that the intent of La.R.S. 13:1569(11) is to establish a duty to train and discipline children with respect to third persons. This court, however, is aware of no statutory or jurisprudential authority which would support such a proposition. In fact, it seems evident that by enacting the statute, the legislature intended to establish that duty in favor of the minor. The fact that the statute establishes a duty in favor of the minor is recognized in State of La. in The Interest of S.S., 499 So.2d 1198 (La.App. 5th Cir. 1986) where the fact that concern for the child was the primary genesis for the statute was recognized in a footnote. In that case, the court stated that prior to the statute, juveniles were “receiving the worst of both worlds” being stripped of the protection afforded to adult offenders without receiving the “solicitous care and regenerative treatment postulated for chil *1343 dren.” Based on the foregoing, we find that there is no duty owed towards Jeff LeBlanc or his parents on the part of the Phillips. Thus, defendants cannot be held liable for their alleged negligence since the first step of the duty-risk analysis (was there a duty owed?), was not answered in the affirmative.
Appellant also attempts to establish negligence on the part of the Phillips by stating that the Phillips failed to properly restrain and correct Odell after “being made aware of numerous incidents at the school.”
The incident which is the subject of this lawsuit was a fight at school which occurred between classes. Under the circumstances, the only connection that the Phillips had with Odell’s presence at the time and place of the incident was that they sent him to school and committed him to the care and supervision of the public school authorities. There is nothing in the record to suggest that the Phillips had a duty to Jeff, his parents or anyone else to remove Odell from school. Odell had not been suspended or expelled so that he was not improperly on the school grounds with the knowledge and permission of the Phillips, but in fact, was there in conformity with the requirements of law. Thus, we find that there was no duty owed by the Phillips toward Jeff or his parents with respect to this issue. Accordingly, the Phillips cannot be held liable under the duty-risk analysis.
Finally, appellant attempts to establish negligence on the part of the Phillips by stating that the Phillips failed and refused to allow the staff at S.J. Welsh Middle School to properly train, discipline, and correct Odell and refusing to allow them to keep him in the behavioral disordered classes to which he was assigned and in which he ordinarily would have been enrolled.
As previously stated, the record indicates that the Phillips were not present at school at the time that the incident occurred. The
Phillips were in no way interfering with the functions of school authorities. Appellant attempts to establish that the Phillips had interfered in the past by removing Odell from the behavioral disordered class. However, if the Phillips had at some time in the past interfered with the authorities’ exercise of discipline, they were not present and were in no way interfering with the authorities’ supervision and discipline at the time of the incident which is the subject of this suit. Which classes Odell might have been assigned to is also immaterial, since the occurrence took place in between classes. Even if the Phillips had been physically present, they would have been under no duty toward Jeff Le-Blanc absent specific knowledge that Odell would strike Jeff LeBlanc. See Davis v. Moreau, 381 So.2d 1297 (La.App. 4th Cir. 1980). Thus, we reject plaintiff’s final assertion.
Accordingly, for the reasons assigned, the judgment of the lower court is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.
GUIDRY, J., concurs in the result.

. For further support see Gooden v. State of Louisiana, Dept. of Health and Human Pe-sources, et al., 546 So.2d 279 (La.App. 3rd Cir. 1989).