700 So.2d 1129 (1997)
Patricia EDWARDS, et al.
v.
Joseph BURGESS, et al.
No. 96-CA-2064.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
*1130 William J. Perry, Russell Stegeman, Stegeman & Associates, Gretna, for Plaintiffs/Appellants.
Iris A. Tate, Wilkerson, Tate & Williams, New Orleans, for Defendants/Appellees.
Before BARRY, LOBRANO and MURRAY, JJ.
MURRAY, Judge.
Plaintiff, Patricia Edwards, individually and on behalf of her minor son, Leslie, appeals summary judgment granted in favor of Joseph and Annie Burgess and the State of Louisiana, through the Department of Community Service. We affirm.

FACTS AND PROCEDURAL HISTORY:
Eric Hickerson, who was a foster child in the care of Joseph and Annie Burgess, and Leslie Edwards, another child in Eric's neighborhood, were playing with darts in Leslie's back yard. Eric threw a dart that hit Leslie in the eye and caused permanent damage. Leslie's parents filed suit against Eric's foster parents and the State of Louisiana as a result of that accident.
Eric and Leslie tell slightly different stories about the events leading up to the accident. Eric claims that Leslie came to his house wanting to play. They left together and went to Leslie's house, and played in the backyard with darts that Leslie got from inside his house. Eric said that, after he and *1131 Leslie had each thrown his dart about twenty times, he asked Leslie to move from near the tree at which they were throwing because he was going to throw the dart really hard. Eric threw the dart, but missed the tree and hit Leslie in the eye. He helped Leslie to the front of the house, and ran to get an ice pack from his own home where he told his foster mother about the incident. She allowed him to take ice to Leslie, but directed him to return home immediately. He did as he was told, and his foster mother punished him.
Leslie, on the other hand, claims that Eric came to him wanting to play. They went together into a neighbor's yard[1] to swing. Leslie said that he started for home because he had been told by his mother not to go outside until she got home from work, and feared he would be punished if she found him. He claims that at this point, Eric removed a dart from his pocket and asked him to play "one more game." Eric then threw the dart at a tree, retrieved it, and gave it to him for a turn. Leslie claims that he threw the dart on the ground because he was not familiar with how to throw darts. Eric then picked up the dart and acted like he was going to throw it at him. Leslie said he ducked behind a tree. When the dart did not hit the tree he asked Eric where it went, and Eric pointed up. Leslie says that he looked up, and the dart came down, hitting him in the eye. He ran home to his sister, who told him to go to his grandfather.
Annie and Joseph Burgess and the State moved for judgment in their favor claiming that there was no theory of negligence upon which plaintiffs could prevail. The trial court rendered judgment in favor of defendants on May 28, 1996, without assigning reasons. This appeal followed.

LAW AND ANALYSIS:
Plaintiffs argue that summary judgment was improperly granted because genuine material issues of fact are in dispute. Specifically, they contend that there is a genuine dispute as to whether Eric acted intentionally when he threw the dart that injured Leslie; as to how well Eric was supervised by his foster parents; the extent to which the State of Louisiana investigated and trained Annie and Joseph Burgess before placing Eric in their home, as well as the extent of supervision by the State after the placement was made. Plaintiffs also argue that the defendants are strictly liable for the damages they have incurred, pursuant to La. Civ.Code arts. 2317 and 2318.[2]
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730. Louisiana Code of Civil Procedure art. 966 provides that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, ..." and "is favored and shall be construed to accomplish these ends." Although summary judgment is favored, the burden of proof remains with the mover to show "that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966C; Moore v. Delta Waste System, Inc., 96-1984, p. 2-3 (La.App. 4 Cir. 03/12/97), 690 So.2d 1108, 1109-1110. Pursuant to the most recent amendment to art. 966, once the mover has met this burden, "if the adverse party who fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La.Code Civ. Proc. art. 966C(2).[3] The adverse party may not rest on the mere allegations or denials of his pleadings. La.Code Civ. Proc. art. 967; Moore, supra.

*1132 Strict Liability:

Plaintiffs argue that La. Civ.Code arts. 2317 and 2318 are applicable to this case. Article 2317 provides that we are responsible for the acts of persons for whom we are answerable, and for things in our custody. Article 2318, which deals specifically with the responsibility for minors, provides that:
The father and the mother, and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors.
The defendants argue that neither foster parents nor the State can be held to be strictly liable for the acts of minors in their care, custody and control, citing Opelousas Scrap Materials, Inc. v. State, Div. of Evaluation & Services, 525 So.2d 1144, 1147 (La. App. 3 Cir.1988).
In Opelousas Scrap Materials, the Third Circuit found that La. Civ.Code art. 2318 was clear and unambiguous and should be applied as written. The codal article unequivocally provides that the responsibility for damage occasioned by minor children extends only to "fathers," "mothers," and "tutors" for the acts of "their" minor or unemancipated children residing with them or placed by them into the care of another only. Id. at 1146. The State, which is merely the legal custodian[4] of children in its care, retains legal custody of these children even though it places them in the physical custody of private individuals, known as "foster parents," to fulfill its responsibilities as legal custodian. Vonner v. State, Through Dept. of Public Welfare, 273 So.2d 252, 256 (La. 1973); Smith v. State, Through Div. of Family Serv., 452 So.2d 388, 389 (La.App. 3 Cir. 1984).
As pointed out in Opelousas Scrap Materials, ordinarily, the State and foster parents have not had the opportunity to nurture and direct the lives of foster children in the same respect that a parent or a tutor might. For that reason, we conclude, as did the Third Circuit, that neither the language of art. 2318 nor the theory of responsibility, based on authority and control that underlies it, suggest that the State or a foster parent can be held strictly liable for the acts of minor foster children. 525 So.2d at 1147. Therefore, plaintiffs have no cause of action in strict liability against either the State or the Burgesses for Eric's actions.

Negligence:
Plaintiffs assert that, even if they have no claim against the defendants for strict liability, summary judgment was not proper because they may prevail under several theories of negligence. They claim that both the State and the foster parents breached a duty owed by them under the circumstances of this case.
In order to establish negligence on the part of either the State or Eric's foster parents, the plaintiffs must prove that "each had acted or had failed to act in a manner consistent with the action that would have been undertaken by the fictionally reasonably prudent person encountering like circumstances." Opelousas Scrap Materials, supra at 1147. The liability of the State and/or the foster parent is based only on the action or inaction of either, not upon any acts of the foster child. Id.
Plaintiffs argue that Annie and Joseph Burgess undertook a duty to supervise Eric properly when they agreed to become his foster parents. They contend that the Burgesses were independently negligent because they failed to supervise Eric, and argue *1133 that summary judgment was granted improperly because there are genuine issues of material fact concerning "the type of person Eric Hickerson was," the type of supervision he required and the type of supervision he received.
Plaintiffs have produced no evidence to support their assertion that the Burgesses supervision of Eric was not reasonable under the circumstances. Although the plaintiffs contend that Annie Burgess testified that Eric's supervisor told her that he was a troubled child who had to be watched closely, Mrs. Burgess actually testified that she was told that Eric had shoplifted in the past, and should be watched closely while shopping. Plaintiffs also contend that Ms. Burgess testified that Eric was often told to stay in his room as punishment, but would crawl out of his window. In fact, Mrs. Burgess testified that Eric left without her permission on only one other occasion. Finally, although plaintiffs claim that Mr. Burgess knew that Eric was talking to Leslie, who was outside Eric's window, and should have had the foresight to know that Eric might sneak out eventually, and secured Eric's bedroom window, there is no evidence in the record that would support this claim. In sum, plaintiffs have failed to establish a genuine issue of fact on the negligent supervision claim.
Nor do we find merit in plaintiffs' argument that summary judgment was improper because there was a genuine issue as to whether Eric acted intentionally. First, the record is totally devoid of any evidence that supports this argument. Rather, all the evidence supports the conclusion that Eric did not throw the dart at Leslie intentionally: Leslie testified that Eric threw the dart up in the air, not at him; Eric testified that he threw the dart at the tree, but missed. Second, even were there a dispute as to Eric's intent, that fact is not material as it has no bearing on whether his foster parents were independently negligent in their supervision of him.
Nor does plaintiffs' contention that there are genuine issues of material fact as to how many darts the children were playing with, and the source of the darts convince us that the summary judgment must be reversed. The number of darts being played with is totally irrelevant; only one dart struck Leslie in the eye. The source of the offending dart really is not in dispute. Leslie testified that his parents owned yellow darts prior to the accident, but that his father had thrown them away. Patricia Edwards corroborated Leslie's testimony that she owned darts prior to the accident, and that these had been put out with the trash. Leslie claims that Eric had removed a dart from a box of items discarded by Leslie's parents, and "hid" it under an old, unused truck on the Burgess's property. Eric, on the other hand, testified that Leslie brought the darts the boys were playing with at the time of the accident from inside his own house on that day.
Leslie also claimed that he saw blue darts in Eric's room at the Burgesses' house. Although this testimony is contradicted by Annie Burgess and Eric, who both testified that Eric did not own any darts, the dart that hit Leslie was yellow. Based on the plaintiffs' own testimony it appears that the "source" of the offending yellow dart was Leslie's parents, not Eric's foster parents.
Plaintiffs also allege that the Burgesses breached their duty to maintain their premises in a safe manner. However, they have offered no evidence to support this argument, and the mere allegation of a premises defect cannot defeat a motion for summary judgment. Bridges v. Carl E. Woodward, Inc., 94-2675 (La.App. 4 Cir. 10/12/95), 663 So.2d 458, writ denied, 95-2735 (La.01/26/96), 666 So.2d 674.
Plaintiffs' final contention as to Annie and Joseph Burgess is that they were negligent in accepting responsibility for a child "such as Eric Hickerson," because Mrs. Burgess was overweight and Mr. Burgess, who was in his mid-sixties, was too old. This assertion has no merit and is offensive. There is no evidence in the record to support the claim that Mr. Burgess' age or Mrs. Burgess' weight rendered either of them incapable of performing as foster parents. The record does reveal that the Burgesses had been foster parents for several years without problems prior to accepting Eric into their home.
*1134 Because there is no evidence in the record that would support plaintiffs' allegations of independent negligence by Mr. and Mrs. Burgess, we find that the trial court properly granted summary judgment in their favor.
As their negligence claim against the State, plaintiffs argue that the State had a duty to investigate and adequately determine whether Annie and Joseph Burgess were qualified to assume the care of Eric, and to evaluate and monitor his mental, physical and emotional state prior to placing him with the Burgesses. They also argue that the State had a duty to continually monitor the mental, physical and emotional state of the Burgesses and Eric, and to properly train the Burgesses in the care of a child "such as Eric."
We note that the duties of the Department of Health and Human Resources as they relate to foster children were established to protect the foster children. See LeBlanc v. Phillips, 546 So.2d 1339, 1343 (La.App. 3 Cir.1989)(commenting that La. R.S. 13:1569(11), setting forth the State's duty to train and discipline children, was enacted in favor of the minor). We also note that, although plaintiffs repeatedly make reference to "a child such as Eric," this record contains no properly admitted evidence that would distinguish Eric from any other eleven year old.[5] All comments concerning Eric's mental and/or emotional state are merely unsupported allegations by the plaintiffs.
Louisiana Revised Statute 46:51(8) provides that the Department of Health and Human Resources "shall administer and supervise all public child welfare activities relating to children who are dependent, neglected, delinquent, or physically or mentally handicapped." It authorizes the State to "contract with private individuals to hold their homes open for and to care for children in need of temporary or long time foster care and provide such other services for children as may be authorized by law." The State shall investigate persons applying to become foster parents.[6] The State shall determine the fitness and eligibility of all applicants, and may award contracts to those eligible.[7] In 1983, La. R.S. 46:283 was amended to provide:
After January 1, 1984, no new contract for foster care services shall be awarded to any person who has not completed a training program approved by the department, including but not limited to the following areas:
(i) Obtaining needed services for foster children.
(ii) Discipline and foster children.
(iii) Legal aspects of foster care.
(iv) Working with parents and the agency.[8]
Annie Burgess testified that she and her husband had been foster parents since the early 1970's. She stated that they both attended classes that lasted for six weeks. Additionally, they were both required to attend a class every year. These classes included instruction on how to handle and discipline mentally handicapped children and children with bad tempers. She testified that she always had a phone number for each child's social worker, and that each child's social worker would visit her home about every two weeks. Additionally, someone from Social Services inspected her home once a year.
Plaintiffs offered no evidence to refute this testimony by Ms. Burgess. Thus, the only evidence in the record supports the conclusion that the State did not breach any duty of investigation, training or supervision of Eric. Because the record contains no evidence that supports the plaintiffs' negligence claim against the State, summary judgment in its favor was properly granted.
We, therefore, affirm the judgment of the trial court in favor of the State of Louisiana, through the Department of Community Service, *1135 and Annie and Joseph Burgess, dismissing plaintiffs' claims against them. Each party is to bear its own costs.
AFFIRMED.
NOTES
[1] That neighbor also was named as a defendant. The claim against her was dismissed on an earlier motion for summary judgment.
[2] This argument is at odds with plaintiffs' Statement of Facts section in their brief which asserts that "[n]ormally a parent is strictly liable for the damages caused by his/her minor child. In the instant case, neither the foster parents nor the state are strictly liable for the acts of Eric Hickerson."
[3] La.Code Civ. Proc. art. 966 was amended by 1997 La. Acts 483, which has been given retroactive application by the ruling in Kaufman v. Fleet Tire Serv. of La., Inc., 97-1428 (La.9/5/97), 699 So.2d 75.
[4] Legal custody is a legal status that is created by court order. It vests in the custodian the right to have physical custody of a child or minor and to determine where and with whom that child shall live within or without the state. It also vests in the custodian the right and duty to protect, train and discipline the child and to provide him with food, shelter, education, and ordinary medical care. It, however, is subject to the powers, rights, duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities. See La. R.S. 13:1569(11), which was in effect on the date of this incident, although repealed effective January 1, 1992.
[5] Plaintiffs make reference to the depositions of J. Robinson and R. Jones in their brief. We presume that these persons are State employees. However, these depositions were not introduced in connection with the motion for summary judgment. They are therefore, not properly before this Court for review.
[6] La. R.S. 46:282.
[7] La. R.S. 46:283(A) and (B).
[8] La. R.S. 46:283(C)(1)(a).