397 So.2d 469 (1981)
State of Louisiana IN the INTEREST OF Robin SAPIA.
State of Louisiana IN the INTEREST OF Tod REDDICKS.
Nos. 80-C-1981, 80-C-1985.
Supreme Court of Louisiana.
January 26, 1981.
*470 William G. Davis, for applicant in both cases.
*471 Steven E. Adams, Charles F. Castille, Dept. of Health and Human Resources, Baton Rouge, for applicant in No. 80-C-1981.
William C. Credo, III, Metairie, for respondents in both cases.
Denis P. Ganucheau, Harahan, for respondents in No. 80-C-1981.
Otha Curtis Nelson, Sr., Staff Atty., Dept. of Health & Human Resources, Baton Rouge, for applicants in No. 80-C-1985.
Samuel B. Stephens, Gretna, for respondents in No. 80-C-1985.
CALOGERO, Justice.
These two cases have been consolidated because they involve identical legal issues, that is, whether the Louisiana Department of Health and Human Resources or the juvenile court has the ultimate authority for the placement of a child adjudged to be in need of care or supervision, and whether the Department of Health and Human Resources is financially responsible for such a child when placed in a private facility by a juvenile court judge. For the reasons which follow, we hold that the juvenile court has the ultimate authority for the placement of such children; however, where the children are placed in a private facility by the judge, there is no statutory authority for requiring the Department of Health and Human Resources to pay for their care and treatment.
In the Sapia case, Robin Sapia was adjudged to be a child in need of care under C.J.P. art. 13(14)[1] and committed to Coliseum House, a private facility, under the authority of C.J.P. art. 85,[2] with custody of the child being assigned to the Administrator of Coliseum House. It was further ordered that all expenses for the housing, care and treatment of Robin in Coliseum House be paid by the State of Louisiana through the Department of Health and Human Resources.
In the Reddicks case, Tod Reddicks was adjudged a child in need of supervision pursuant to C.J.P. art. 13(13)[3] and, under *472 C.J.P. art. 84,[4] placed in Brentwood Hospital, a private facility, with the concurrent order that the State, through the Department of Health and Human Resources, assume financial responsibility for the treatment of Tod at Brentwood.
The Department of Health and Human Resources argues that the responsibility for placement, care and treatment of juveniles adjudged in need of care or supervision has been statutorily placed with them under R.S. 13:1580, and that the Department is only financially responsible for such children as are assigned to their custody and placed by them.
R.S. 13:1580, relied on by the Department, provides:
"Notwithstanding any other provision of law to the contrary, including but not limited to any provision of the code of juvenile procedure, when a child is referred to the Department of Health and Human Resources for care and treatment, and when such care and treatment are to be provided in a setting other than his own home or the home of a relative, the child shall be assigned to the custody of the Department of Health and Human Resources, rather than to a particular institution or facility. This provision for the assignment of custody shall apply regardless of whether the care and treatment are provided directly by the Department of Health and Human Resources or through purchase of service arrangements for which the Department of Health and Human Resources provides funding. The Department of Health and Human Resources shall have authority to select from the resources that are available the types of services and service setting most appropriate to the child's needs and to place the child in that setting."
It is clearly provided by the above statute that when a child is referred to the Department of Health and Human Resources for care and treatment he is to be assigned to their custody, and once given custody of the child, the Department then has the authority to select the appropriate placement facility and to place the child accordingly. R.S. 36:258[5] was enacted in the same legislative *473 session, presumably to assist in the implementation of the above provision by creating a "client placement division" within the Department of Health and Human Resources.
However, C.J.P. arts. 84 and 85, also enacted in the same legislative session, (See footnotes 2 and 4 for the text) give the juvenile court the authority to place the child adjudged in need of care or supervision in the custody of the person or agency it determines will best serve the interests of the child. (Of course, prior to the enactment of these articles, the court had this same authority under R.S. 13:1580.)
The Department of Health and Human Resources argues that R.S. 13:1580 and C.J.P. arts. 84 and 85 are in conflict, giving both the Department and the court authority to place a child adjudged in the need of care or supervision, and that R.S. 13:1580 should prevail, giving the Department the ultimate authority for placement, because it specifically provides that it is an exception to the Code of Juvenile Procedure and because it is the later legislative enactment.
C.J.P. arts. 84 and 85 were enacted by Act No. 172 of 1978 and approved by the Governor on June 6, 1978. R.S. 13:1580 was enacted by Act No. 786 of 1978 and approved by the Governor on July 17, 1978. Both statutes became effective on the same date, January 1, 1979. It is well settled that where two acts relating to the same subject are passed at the same legislative session, there is a strong presumption against implied repeal, and they are to be construed together, if possible, so as to reconcile them, giving effect to each, unless there is a clear conflict between them which must be resolved. Marquette Cement Manufacturing Co. v. Normand, 249 La. 1027, 192 So.2d 552 (1966); City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237 (1949). Where there is a direct conflict, the last statute in order shall prevail. State v. Bosworth, 373 So.2d 152 (La. 1979); State v. St. Julian, 221 La. 1018, 61 So.2d 464 (1952).
In the present case, there is no such conflict. C.J.P. arts. 84 and 85 give the juvenile court the power and authority to assign custody of a child adjudged in need of care or supervision to any person or agency, whether public or private, which it deems will serve the best interest of the child. R.S. 13:1580 gives the Department of Health and Human Resources the authority to place a child in the facility which it determines will serve the child's best interests where the child has been initially referred to the Department for treatment and assigned to their custody by the juvenile court. Therefore, the juvenile court judge initially determines where custody of the child shall be assigned. Once the judge determines the custody of the child should be assigned to the Department of Health and Human Resources, and so assigns custody of the child, the Department then has the authority to determine where the child should be placed. If the court determines that the child is not being properly cared for it may remove custody from the Department and place it elsewhere.
This interpretation is further supported by R.S. 13:1580.2, a succeeding provision to R.S. 13:1580 and passed in the same legislative session, which gives the court authority to periodically review the status of all children whose custody it has placed in the Department. R.S. 13:1580.2 provides:
"The Department of Health and Human Resources shall, whenever it has been assigned custody of a child by judicial order, file a written report to the court on the status of the child six months after the initial placement of the child and every twelve months thereafter. This report shall be filed with the court which placed the child in the custody of the Department of Health and Human Resources. The court shall consider such reports and may hold hearings on the status of the child for the purpose of determining whether the child should remain in the care and custody of the Department of Health and Human Resources, should be returned to the parent, tutor, guardian, or relative, or should receive some alternative program of care, support and supervision."
*474 This provision requires that the Department of Health and Human Resources make periodic reports to the court on every child whose custody has been assigned to the Department by judicial order. It further provides that the court has the power to review the status of these children and to withdraw custody from the Department and place the child elsewhere if it determines such action is appropriate. These provisions clearly imply that the court, rather than the Department, has the superior authority with respect to child placement.
An interpretation giving the Department superior authority to determine, in all instances, where children adjudged in need of care or supervision should be placed, would render the above provision meaningless. There would be no reason to require judicial review of the children's status if the court did not have the authority to remove custody from the Department and place the child elsewhere.
Therefore, we conclude that the juvenile court has the authority to place custody of a child adjudged in need of care or supervision in a private facility if it deems such placement to be in the best interest of the child. Only where the custody of the child is initially assigned by the judge to the Department of Health and Human Resources may the Department make the determination as to where the child should be placed. Thus, the judge in both the Sapia case and the Reddicks case acted within his statutory authority in placing the children in private facilities rather than state facilities since custody, in neither case, had been assigned to the Department of Health and Human Resources.
The second question presented in this case, and actually the more significant one, is whether the juvenile court judge, once he has assigned custody of the child to a private facility, can order the Department of Health and Human Resources to pay for the care and treatment of the child.
R.S. 15:1081-1086 provide the sole statutory authority for payment by the Department of Health and Human Resources for the care and treatment of children in nonstate operated facilities. R.S. 15:1081 provides:
"Notwithstanding any other provision of law to the contrary, the provisions of this Part [R.S. 15:1081-1086] shall serve as the sole statutory authorization under which the Department of Health and Human Resources shall make payments for the care and treatment of children in nonstate operated child caring agencies, child placing agencies, shelter care facilities, and maternity homes." (Emphasis provided.)
Thus, unless payment by the Department for children placed in private facilities is authorized by the statutes which follow in that Part (sections 1081-1086 of Title 15), the Department cannot be ordered to pay for such care and treatment. In reviewing these statutory provisions, it is clear that, under R.S. 15:1085,[6] the Department of Health and Human Resources is only authorized to make payments for the care and treatment of children in nonstate facilities where the children are placed there by the Department.
There are, of course, strong arguments to be made that the juvenile's best interest is served by permitting the juvenile court to *475 place the child adjudged in need of care or supervision in private facilities at the expense of the state or its appropriate department. Unfortunately, the Legislature, focusing on fiscal restraint and centralized supervision, has seen fit to do otherwise. Consequently, there is no statutory authority to support the juvenile court's order requiring payment by the Department of Health and Human Resources for the care and treatment of these two children. We are not empowered to change the law or to apply such law as we might prefer, but rather must enforce clearly applicable statutes enacted by the Legislature.
Therefore, we conclude that the juvenile court cannot order the Department of Health and Human Resources to pay for the care and treatment of a child placed in a private facility where such placement was made by the court itself and not by the Department. Under the present legislation, the court erroneously ordered the Department of Health and Human Resources to make payments for the care and treatment of both Robin Sapia and Tod Reddicks in private facilities. Those rulings must be reversed.
We specifically do not address constitutional issues as they might apply to the case at hand because none have been raised here or in the courts below.

Decree
For the foregoing reasons, we find that the parts of the Court of Appeal judgments allowing the juvenile court judge to place the children in private facilities are correct. However, the parts of the judgments affirming the juvenile court's order requiring the Department of Health and Human Resources to assume financial responsibility for the children are not. Rather than simply affirm in part and reverse in part, considering that the juvenile court judge may choose an alternate placement in light of our vacating his judgment ordering the Department of Health and Human Resources to pay, we simply vacate the judgments below and remand the case for further proceedings.
JUVENILE COURT AND COURT OF APPEAL JUDGMENTS VACATED; CASES REMANDED TO JUVENILE COURT.
NOTES
[1] C.J.P. art. 13(14) provides:

"(14) `Child in need of care' means a child:
(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental or emotional health of the child;
(b) Whose physical, mental or emotional condition is substantially threatened or impaired as a result of the refusal or neglect of his parent to supply the child with necessary food, clothing, shelter, medical care, counseling or education, or as a result of the parents's neglect or imposition of cruel punishment; or
(c) Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent, or because of any other reason."
[2] C.J.P. art. 85 provides:

"A. In a case in which a child has been adjudicated to be in need of care, the court may:
(1) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child;
(2) Place the child in the custody of a private or public institution or agency;
(3) Commit a child found to be mentally defective to a public or private mental institution or institution for the mentally defective; or
(4) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.
B. A child in need of care shall not be committed to the Department of Corrections."
[3] C.J.P. art. 13(13) provides:

"(13) `Child in need of supervision' means a child who needs care or rehabilitation because:
(a) Being subject to compulsory school attendance, he is habitually truant from school or willfully violates the rules of the school;
(b) He habitually disobeys the reasonable and lawful demands of his parents, and is ungovernable and beyond their control;
(c) He absents himself from his home or usual place of abode without the consent of his parent;
(d) He purposefully, intentionally and willfully deceives, or misrepresents the true facts to, any person holding a retail dealer's permit, or his agent, associate, employee or representative, for the purposes of buying or receiving alcoholic beverages or beer, or visiting or loitering in or about any place where such beverages are the principal commodities sold or handled;
(e) His occupation, conduct, environment or associations are injurious to his welfare; or
(f) He has committed an offense applicable only to children."
[4] C.J.P. art. 84 provides:

"A. In a case in which a child has been adjudicated to be in need of supervision, the court may:
(1) Place the child in the custody of a parent or other suitable person on such terms and conditions as deemed in the best interest of the child and the public;
(2) Place the child on probation on such terms and conditions as deemed in the best interest of the child and the public;
(3) Assign the child to the custody of a private or public institution or agency;
(4) Commit a child found to be mentally defective to a public or private mental institution or an institution for the mentally defective; or
(5) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child.
B. A child in need of supervision shall not be committed to the Department of Corrections."
[5] R.S. 36:258 provides in pertinent part as follows:

"(3)(a) Within the office of human development, there shall be established a client placement division which shall have the responsibilities and authority including, but not limited to, the following:
(i) To assess or arrange for the assessment of the needs of each client.
(ii) To provide or arrange for the provision of comprehensive diagnosis and evaluation services as the needs of each client warrant.
(iii) To develop comprehensive service plans for each client.
(iv) To assign responsibilities for providing services, and for providing funding for such services.
(v) To place clients in the setting most appropriate to the client's needs including any nonresidential, community based residential, any institutional programs operated by the Department of Health and Human Resources, as well as programs operated by other public or private agencies with which the Department of Health and Human Resources enters into contractual or purchase of services arrangements.
(vi) To periodically review the progress of clients, and modify the client's service plan as warranted.
(vii) To terminate services to the client, except that in the case of clients who have been placed in the custody of the Department of Health and Human Resources by judicial commitment or court order, the court of proper jurisdiction shall retain the authority to terminate custody by the Department of Health and Human Resources and to vest or revest such custody in another individual or agency."
[6] R.S. 15:1085 provides:

"A. The Department of Health and Human Resources is hereby authorized to make payments, at the rates established under R.S. 15:1084, for the care and treatment of children placed by the Department of Health and Human Resources in child caring agencies, child placing agencies, maternity homes, and shelter care facilities which conform to the requirements of this Part.
B. Payments shall be made on a monthly basis and shall represent reimbursements for services provided during the previous month. Participating agencies shall submit such information as the Department of Health and Human Resources may require to document claims for reimbursement.
C. Participating agencies and facilities shall receive one and only one monthly payment from the Department of Health and Human Resources for services rendered to each child under this Part except for such adjustments as may be necessary to rectify previous inaccurate payments." (Emphasis added.)