KLIEBERT, Judge.
This is an appeal by the Department of Health and Human Resources (DHHR) from a judgment of the Juvenile Court ordering the DHHR to maintain the status quo of a child in need of care in his independent living situation for a period of 60 days. For the reasons which follow, the judgment of the Juvenile Court is affirmed.
On September 15, 1981 the minor child was adjudicated a child in need of care by stipulation of the parties which included his natural mother. The affidavit in support of the application alleged that the 16 year old had a history of abuse by his mother, father, step-father and step-brother. The child was placed in the custody of DHHR and placed in Jo Ellen Smith Hospital.
The record reflects that the child remained in the custody of DHHR in various living facilities. On March 5, 1985, the court, during a review hearing, noted that the child was attending Delgado Community College and that he wished to remain in the custody of DHHR until he was twenty-one years old.
On June 9, 1985 the child, through his court-appointed attorney, filed a motion for a dispositional review hearing alleging the DHHR was about to terminate the funding of his independent living situation.
At the hearing the child testified that he was born on August 22, 1965. His foster care case worker certified that he was receiving the state boarding rate which normally went to foster parents. He received another $300.00 per month to pay his apartment rent; however, the social worker informed him this would be terminated because he failed to maintain a “C” average in school. According to her testimony, the DHHR believed the continued giving of assistance to the child would no longer be of help to him.
An adult case worker with the DHHR suggested the child be placed in an adult program and apply for Supplemental Security Income (SSI). In the meantime, she suggested the child be moved into Villa D’Angelo, a for-profit boarding house that catered to older persons receiving SSL
At the conclusion of the trial, the Juvenile Court found the independent living status under which the child was being maintained was not previously subject to the child maintaining 12 hours of academic studies and ordered the DHHR to maintain the status quo provided the child obtained employment and contributed $100.00 per month towards his independent living, pending a review hearing scheduled for October 22, 1985. The court noted in its *540 oral reasons that it was very familiar with this particular child’s case because he had known the child for many years. It is apparent from the court’s ruling that the court’s desire was to gradually wean the child from the DHHR’s assistance rather than suddenly abandon him as proposed by the DHHR. From that judgment the DHHR appeals.
On appeal the DHHR contends that by ordering it to maintain the status quo the Juvenile Court violated the supreme court ruling made in In the Interest of Sapia, 397 So.2d 469 (La.1981), in which, at page 474, the court held:
“Thus, unless payment by the Department for children placed in private facilities is authorized by the statutes which follow in that Part (sections 1081-1086 of Title 15), the Department cannot be ordered to pay for such care and treatment. In reviewing these statutory provisions, it is clear that, under R.S. 15:1085,® the Department of Health and Human Resources is only authorized to make payments for the care and treatment of children in nonstate facilities where the children are placed there by the Department.” (Footnote Omitted)
We do not agree the order violated the holding in Sapia.
As we view the record the DHHR was attempting to cease funding the child’s independent living situation because of their determination that child care was no longer helpful to the child. This action by the DHHR amounted to an ex parte determination by it, that the child was no longer a child in need of care. Under the Juvenile Code it is unquestioned that the exclusive power to adjudicate a child in need of care lies with the judiciary.
Code of Juvenile Procedure Article 2 provides:
“Art. 2. Purpose and construction.
The provisions of this Code shall be liberally construed to the end that each child coming within the jurisdiction of the court shall be accorded due process and shall receive, preferably in his own home, the care, guidance, and control that will be conducive to his welfare and the best interests of the state, and that in those instances when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which the parents should have given him. These Code provisions shall be construed to secure simplicity in procedure, fairness in adjudication and administration, and the elimination of unjustifiable delay.”
Code of Juvenile Procedure Article 19 provides:
“A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders. It has authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that the juvenile proceedings shall be conducted with dignity and in an orderly and expeditious manner.”
Thus, as we view the case, the Juvenile Court’s order was to effectuate an orderly transition from a child care program to an adult care program or no assistance rather than to suddenly abandon the child care assistance. Hence, we cannot say the Juvenile Court’s desire for an orderly transition was error or that the judge erred in finding the child continued to be a child in need of care until an orderly transition could be accomplished.
Accordingly, we affirm the Juvenile Court’s order.
AFFIRMED.