499 So.2d 1198 (1986)
STATE of Louisiana In the Interest of S.S.
No. 86-CA-412.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Janice L. Kazmier, New Orleans, for Dept. of Health and Human Resources, appellant.
George Escher, New Orleans, for minor child, appellee.
Before CHEHARDY, KLIEBERT and GOTHARD, JJ.
GOTHARD, Judge.
The State of Louisiana, through the Department of Health and Human Resources (hereinafter DHHR or the Department) appeals that portion of a judgment of the juvenile court ordering DHHR to provide any and all economic assistance to maintain the minor child, S.S., at Xavier Preparatory School, a private school, until her graduation.
S.S. was a juvenile female brought under the jurisdiction of juvenile court in Jefferson Parish on February 14, 1986[1] when an *1199 instanter order was issued by the court following the allegations of child protective service worker, that S.S. had been abused and was a child in need of care. Thereafter, a petition was filed by the district attorney requesting the juvenile court to take formal jurisdiction and find the child to be a child in need of care, and, accordingly, issue such orders as it deemed necessary for the welfare of the child. In accordance with the provisions of LSA-C.J.P. art. 13(14)(a) and LSA-C.J.P. art. 15(C) a continued custody hearing was held on February 20, 1986, and temporary custody was granted to DHHR.
At the adjudicatory hearing on March 18, 1986, the allegations of the petition were admitted and S.S. was adjudicated a child in need of care. Previous legal custody with DHHR was maintained, and DHHR was to provide for psychological evaluations on the mother and child. At the dispositional hearing on April 29, 1986, the court continued custody with DHHR and, in pertinent part, the court ordered that DHHR, as the custodian, was to "... provide the wherewithal, however that be done, to maintain [S.S.] in Xavier through graduation ..." A six month review was set for October 21, 1986. On May 12, 1986, DHHR moved to modify the judgment of disposition which ordered it to meet the financial costs of private education at Xavier, because the Department was unable to meet the costs for such private schooling. The Department's motion was denied on May 14, 1986, and the Department thereafter moved for a suspensive appeal from the judgment of disposition on April 29, 1986. The trial judge granted the motion, but for a devolutive appeal only.
The sole issue before this court is whether the juvenile court has the authority to choose the particular educational services that DHHR must pay for and provide for a child adjudged to be in need of care and in the legal custody of the said DHHR.
The brief of DHHR avers that the judge erred when he ordered S.S. to attend a private school, on the ground that selection of educational service rests with the Department as the legal custodian as per LSA-R.S. 13:1580(C), and State in the Interest of Sapia, 397 So.2d 469 (La.1981). DHHR further argues that as the legal custodian of a foster child it has the recognized responsibility under LSA-R.S. 13:1569(11)[2] "to provide him with ... education," but that such responsibility does not include the obligation to fund a private education for such a child unless an adequate education cannot be provided by the public schools. The Department argues that S.S. has not been determined to be an exceptional child under LSA-R.S. 17:1941, and that her educational needs should be adequately provided for with the public school system. LSA-R.S. 13:1580, relied on by the Department, provides in pertinent part:
"... Notwithstanding any provision of law to the contrary, including but not limited to any provision of the Code of Juvenile Procedure, when a child is referred to the Department of Health and Human Resources or the Department of Public Safety and Corrections for care and treatment, and when such care and treatment are to be provided in a setting other than the child's own home or the home of a relative, the child shall be assigned to the custody of the department rather than to a particular institution or facility.
... The Department of Health and Human Resources or the Department of Public Safety and Corrections, as the case may be, shall have authority to select the types of services and service *1200 setting from the resources that are available which are most appropriate to the child's needs."
It is clearly provided by the above statute that when a child is referred to the Department of Health and Human Resources for care and treatment he is to be assigned to its custody, and once given custody of the child, the Department then has the authority to select the appropriate placement and services to be provided the child. LSA-R.S. 36:258[3] assists in the implementation of the above provision by creating a "client placement division" within DHHR.
Historically, between the creation of the first Juvenile Court in Chicago in 1899, and the case of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), there were few limitations placed upon juvenile court judges. Consequently, there was a great deal of discontent in that the system for children was not developing as originally envisioned and that some children in the juvenile justice system were "receiving the worst of both worlds."[4] While the cited case refers to delinquency, rather than neglect and abuse, the same situation existed for countless neglected and abused children as well as children in need of supervision. Inappropriate commitments *1201 of these children were often the rule rather than the exception, and many placements were made contrary to their best interests.
In Louisiana, the State made its first attempt at delineating the power of the juvenile court judge, with the enactment of the first uniform juvenile code in 1950 which provided inter alia, that:
... It is, however, declared to be the public policy of this State that whenever the custody of a child is assigned to a public or private agency or institution by the court such instrumentality shall be encouraged and permitted to exercise its discretion in the treatment, training, supervision, and discipline of the child in order that the child may derive the maximum benefit from experience and qualified professional services; it being the intention that the court shall not be burdened or directly concerned with the techniques, plans and details of such services but shall concern itself primarily with the over-all consideration being given to the welfare of the child. The court may at any time require progress reports or such other information as it may deem necessary in its discretion and as the circumstances require, or may order the child returned to the court for discharge or further disposition.
(Acts 1950 No. 82 Sec. 2. As enacted in Chp. 6 of Title 13 of the Louisiana Revised Statutes of 1950 being R.S. 13:1572. This section was repealed by Acts 1978, No. 172 Sec. 5. See, now, LSA-C.J.P. arts. 13, and 14 to 18. See also, LSA-R.S. 13:1580.)
The overall or general consideration for the welfare of the child is still the exclusive domain of the juvenile court judge, whereas the specific placement of children in custody of various state agencies and payment for such services, foster homes, agencies or institutions is the domain of the State where custody of children in need of care, in need of supervision, or children adjudged to be delinquent, has been assigned to the State. LSA-R.S. 13:1580, LSA-R.S. 46:2427,[5]State In the Interest of Sapia, supra. Thus, it is the juvenile court which initially determines if a child in need of care shall be placed in the custody of the State or a private facility or any other alternative placement. However, once custody is granted to the State, in this case DHHR, it is their responsibility to implement the general provisions of the judgment and they have the latitude to do so as specifically spelled out in LSA-R.S. 13:1580, and State in the Interest of Sapia, supra. Additionally, LSA-R.S. 15:1081-1086 as the sole statutory authority for payment by DHHR for the care and treatment of children in nonstate operated facilities further effectuates this apportionment of responsibilities. LSA-R.S. 15:1081 provides:
"Notwithstanding any other provision of law to the contrary, the provisions of *1202 this Part [LSA-R.S.1081-1086] shall serve as the sole statutory authorization under which the Department of Health and Human Resources shall make payments for the care and treatment of children in nonstate operated child caring agencies, child placing agencies, shelter care facilities, and maternity homes." (Emphasis provided.)
Thus, unless authorized by the statutes which follow in that part LSA-R.S. 15:1081-1086, the Department cannot be ordered to pay for children placed in private facilities. LSA-R.S. 15:1085[6] further provides that payment by DHHR for care and treatment of children in nonstate facilities is authorized only where the children are placed there by the Department.
In the general consideration of a child in need of care case in which legal custody has been granted to the State, and where the child is in foster care, there are many substantive and procedural requirements that must be complied with pursuant to both Louisiana and Federal Law.[7] In sum, the provisions of these laws are to the effect that the needs of the child in foster care must be met in a variety of ways. It would belabor the point to spell out the myriad concerns and requirements contained in these laws, but suffice it to say that it is the province of the juvenile court judge, indeed, it is the mandate to the juvenile court that the child's needs, best interests, and legal rights are met. This is the reason for elaborate contracts that are entered into in court and signed by all parties, including the judge. And this is also the reason why the case is reviewed every six months, to insure that the foster child has not been forgotten in foster care, and to also insure that the terms of the contract, including the needed services and treatment programs are being provided.
In the instant case, unlike the Sapia case, placement of the child is not in dispute. The trial judge assigned legal custody to the Department and maintained physical custody of her with the foster parents. Rather, the dispute involves whether the Department's fiscal budget can afford to pay for the private education of a foster child in its care where the child's educational needs might as adequately be met in a public school. If it is determined, as the Department urges, that the educational needs of S.S. can be adquately met in a public school, then under the governing legal authority, the juvenile court clearly exceeds its authority to order that DHHR maintain her in a private school.
In connection with such determination, the state is obliged under LSA-R.S. 17:1941-1946, to identify and to provide for appropriate education for the exceptional child, which by statute is defined to include the gifted and talented child.[8] The state is further required to provide for nonstate *1203 educational services if so warranted by the particular educational needs of the child. There is nothing in the record before this court to show that the State has met its obligations under this Part as regards S.S.
A review of the record reveals that at the time of the disposition review hearing on April 29, 1986, S.S. was 17 years old and in the eleventh grade. She has attended Xavier Prep since her freshman year. She is a member of the National Honor Society which requires its members to maintain at least a 3.5 scholastic average. She is eligible for college preparatory summer classes in pre-med. Additionally, during the last school year, over one-half of the cost to attend Xavier Prep was paid for by S.S. through a work study program. (Her mother paid the remainder of the cost.) And it is noted that after his psychological evaluation of S.S. on April 28, 1986, Dr. William Bradford Janzen recommended that she be maintained at Xavier Preparatory School.
The juvenile judge, without hesitation, on the evidence and testimony presented, found S.S. to be a very bright girl, and, further, noted for the record that her scholastic goal to take pre med courses was a realistic one. As a result of his findings, he ordered that DHHR as legal custodian of S.S. maintain her at Xavier with appropriate counseling to guide her through her educational pursuits. Thus, it appears that the trial judge ordered private schooling because in his estimation it was the educational service most appropriate to the child's best interests and needs.
Therefore, it would strongly appear that S.S. is a gifted and highly motivated child and is in the proper school at this time. This finding is further buttressed by the recommendation of Dr. Janzen, a highly respected psychologist who is the Department's own consultant. However, there has been no formal determination of her status as a gifted child.
In fairness to the Department, we are unable to hold this case to be an exception to the governing legal authority without more evidence of the educational services most appropriate to the child's best interests and needs. Accordingly, under the provisions of LSA-C.C.P. art. 2164, the court in its discretion will remand the case to permit the introduction of clarifying evidence to determine whether or not S.S. is an exceptional child within LSA-R.S. 17:1943, and, if so, whether her special needs may best be met at a state or non-state educational facility.
For the foregoing reasons the judgment of the juvenile court is reversed and the case remanded to the lower court for further proceedings not inconsistent with the views expressed herein.
REVERSED AND REMANDED.
NOTES
[1] The record shows that S.S. was first brought under the jurisdiction of the court is February, 1983, but that the court later returned legal and physical custody of S.S. to her mother in April, 1983.
[2] LSA-R.S. 13:1569(11) provides: "Legal custody means a legal status created by court order which vests in a custodian the right to have physical custody of the child or minor and to determine, where and with whom he shall live within or without the state, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education and medical care ..."
[3] LSA-R.S. 36:258 provides inter alia as follows:

"G(1)(b) The office of human development shall administer a process of placement for the clients of the department. All programs and units within the department shall assist the office of human development in administering the placement process for clients by making available, on request, needed information, services, and resources.
(2)(a) Within the office of human development there shall be established a division of children, youth, and family services (formerly known as the division of evaluation and services), which shall perform the functions of the office relating to the provision of comprehensive social services programs to children and adults, including, but not limited to, foster care, day care, adoption, and protective services, and shall provide related services for persons dependent, neglected, abused, disabled, blind, and elderly, with the exception of those programs and services assigned to the office of elderly affairs in the office of the governor. It shall also provide programs and services relating to the prevention of abuse and neglect of children and adults, and the care and treatment of children who are alleged to be or adjudicated in need of care.
(b) The division shall also have the responsibilities and authority, including, but not limited to, the following:
(i) To assess or arrange for the assessment of the needs of each client.
(ii) To provide or arrange for the provision of comprehensive diagnosis and evaluation services as the needs of each client warrant.
(iv) To assign responsibilities for providing services and for providing funding for such services.
(v) To place clients in the setting most appropriate to the client's needs including any nonresidential, community based residential, and institutional programs operated by the Department of Health and Human Resources, as wll as programs operated by other public or private agencies with which the Department of Health and Human Resources enters into contractual or purchase of services arrangements.
(vi) To periodically review the progress of clients and modify the client's service plan as warranted.
(vii) To terminate services to the client, except that in the case of clients who have been placed in the custody of the Department of Health and Human Resources by judicial commitment or court order, the court of proper jurisdiction shall retain the authority to terminate custody by the Department of Health and Human Resources and to vest or revest such custody in an individual or agency.
[4] Kent v. United States, 383 U.S. 541, 554, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966).

While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guarantees applicable to adults. There is much evidence that some juvenile courts ... lack the personnel, facilities and techniques to perform adequately as representatives of the State in a parens patriae capacity, at least with respect to children charged with law violation. There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children. (Footnotes omitted) See also People v. Fitzgerald, 244 N.Y. 307, 155 N.E. 584 (1927), "What a child charged with crime is entitled to is justice, not a parens patriae which in time may become a little calloused, partially cynical and somewhat overcondescending."
[5] LSA-R.S. 46:2427 provides inter alia as follows:

A. The court shall conduct a dispositional review hearing at least once every twelve months after the child, pursuant to a child in the need of care proceeding, is placed in foster care or enters the custody of the department, whichever is earlier, or upon the request of the department, an agency or institution directly responsible for care or placement of the child, a parent, a mature child through his attorney, or upon its own motion. The court shall schedule the hearing as soon as possible after receiving a request.
. . . . .
F. In the course of the dispositional review, the court may determine the adequacy and compliance with the case permanency plan and case progress report. In addition to other dispositional orders pursuant to C.J.P. Article 85, the court may:
(1) Order the department to develop or expand a case permanency plan or case progress report which must be submitted ten days after the hearing.
(2) Set a court hearing at a specific later time.
(3) Direct the local citizen review board to review the status of the child prior to its next six month review.
G. The court shall base its determination and findings at the dispositional review hearing upon the competent evidence presented. The court may consider the case permanency plan, case progress report, and observations and recommendations of the local citizen review board, to the extent of thier probative value.
[6] LSA-R.S. 15:1085 provides:

"A. The Department of Health and Human Resources is hereby authorized to make payments, at the rates established under R.S. 15:1084, for the care and treatment of children placed by the Department of Health and Human Resources in child caring agencies, child placing agencies, maternity homes, and shelter care facilities which conform to the requirements of this Part.
B. Payments shall be made on a monthly basis and shall represent reimbursements for services provided during the previous month. Participating agencies shall submit such information as the Department of Health and Human Resources may require to document claims for reimbursement.
C. Participating agencies and facilities shall receive one and only one monthly payment from the Department of Health and Human Resources for services rendered to each child under this Part except for such adjustments as may be necessary to rectify previous inaccurate payments." (Emphasis added.)
[7] PL 96-272 June 17, 1980, 94 Stat. 500, "Adoption Assistance and Child Welfare Acts of 1980." Also, LSA-R.S. 46:2419-2427, providing for semi annual and annual review hearings.
[8] LSA-R.S. 17:1943 provides in part:

"... An `exceptional child' is any child who is located, identified, and evaluated according to R.S. 17:1945 and is defined in the regulations developed pursuant to R.S. 17:1944 as being mentally handicapped, gifted and talented, hard of hearing, deaf, speech impaired, severe language disordered, visually handicapped, emotionally disturbed, orthopedically handicapped, hospital/homebound, other health impaired, learning disabled, educationally handicapped, slow learner and as a result may require special education or related services.
LSA-R.S. 17:1944 provides in part:
"... The provisions of this Chapter shall be administered at the state level by Department of Education, with the approval of its governing authority, and on the city or parith level by parish of city school boards. The Department of Education with the approval of its governing authority shall provide only general supervision and monitoring when the provisions of this Chapter by law are administered through or in other state agencies.
For purposes of administering this Part, the superintendent of education shall establish within the department a division of special education services which shall provide general supervision and monitoring of all education programs for exceptional children conducted within the state, including all such education programs administered by other state or local agencies.
B. The division of special education services herein established shall have the following powers and duties:
(1) To regulate, consult with, and assist school boards in the awareness, location, identification, evaluation, referral and placement, and reassessment of children who require special education.
. . . . .
(14) To require placement of exceptional children needing special education or related services in public or nonpublic schools or other agencies nearest their place of residence, if placement is appropriate.