Dear Senator Ewing and Representative Downer:
This office is in receipt of your opinion requests in which you seek advice on the constitutionality and applicability of certain provisions of Title 27. You express your concerns as follows:
 1. "Under Louisiana's separation of powers doctrine, the Governor possesses inherent powers as the state's Chief Executive. These powers are not subject to legislative oversight. The Gaming Control Board is a creation of the Legislature and therefore subject to legislative oversight in the execution of any powers granted to it by statute. R.S. 27:224, grants the Governor the authority, by executive order, to negotiate a new operating contract for the casino. Under Article II, Sections 1 and 2, the Legislature does not have authority to oversee the exercise of the inherent powers of the Governor, i.e. the issuance of executive orders. We ask you to issue an opinion clarifying whether the Governor possesses the inherent power, as Chief Executive of the State, to negotiate and execute an operating agreement between the state and a casino operating entity."
 2. "The Gaming Control Board is a creation of the Legislature and with respect to the execution of the land-based casino operating contract, R.S. 27:245(A) authorizes the Board to renegotiate the provisions of a casino operating contract if the casino operator is in bankruptcy. We ask you to issue an opinion clarifying whether the Gaming Control Board has independent authority to renegotiate and execute an operating Agreement between the state and Harrah's in New Orleans."
Some background is required prior to discussing the sections of the law we find pertinent.
The State of Louisiana, through the LEDG Corporation, executed a Casino Operating Contract with Harrah's Jazz Company. On November 22, 1995, Harrah's Jazz Company filed a Petition For Relief seeking the protection of the United States Bankruptcy Court under Chapter 11 of the Bankruptcy Code. At that same time, the temporary casino was shut down. When the temporary casino ceased operations there was no longer a funding source for the Louisiana Economic Development Gaming Corporation, and, therefore, no money for it to continue its operations.
On February 2, 1998, in connection with the Bankruptcy proceeding, a third Amended Plan of Reorganization was confirmed by the United States Bankruptcy Court in the Eastern District of Louisiana. In the Plan of Reorganization, the original parties of Harrah's Jazz Company amended their ownership interest and formed a reorganized company known as Jazz Casino Company, L.L.C. The reorganized company will retain the Casino Operating Contract as approved and amended by the Louisiana Gaming Control Board, and will retain certain contractual obligations and additional conditions as imposed by the Louisiana Gaming Control Board, and as set forth in Title 27.
Within the context of the bankruptcy proceeding, renegotiating a Casino Operating Contract with the debtor is necessary for a successful plan of reorganization. Agreements and contracts are governed by 11 U.S.C. § 365,11 U.S.C. § 362. Additionally, 11 U.S.C. § 525
protects the debtor against discriminatory treatment by a governmental unit solely because the debtor has sought the protection of the Bankruptcy court. Accordingly, during the pendency of the bankruptcy, the contract with Harrah's Jazz Company was not set aside, revoked, or rejected. Instead, all parties, with court approval, have engaged in continual renegotiations of the contract.
We now turn to the specific questions you have presented.
With regard to your first question, it is pertinent that during the First Extraordinary Session of 1996, in an attempt to deal with this situation, legislation was introduced to establish the new Louisiana Gaming Control Board and reconcile the previous corporation gaming provisions with the gaming provisions for the new Board.
In 1996, at the time the provisions of R.S. 27:224 were being considered, the old LEDG Corporation was dormant and inactive but still in existence. Other legislation transferring all power and authority of that corporation to the new Gaming Control Board was also going through the Legislature. Act 58 of the 1996 First Extraordinary Session contained the provisions designated as R.S.27:224(A)(B)(C)(D) and (E).
R.S. 27:224(D) and (E), which are pertinent to your request, state:
 D. The governor by executive order, subject to legislative approval either by vote or by mail ballot, or the legislature by Act or Resolution may set aside or order that the corporation renegotiate the provisions of the casino operating contract of a casino operator who is voluntarily or involuntarily placed in bankruptcy, receivership, conservatorship, or similar status. Any action so taken shall constitute the revocation or modification of a pure and absolute revocable privilege as provided in R.S. 27:202(C). Neither the state of Louisiana nor any political subdivision thereof shall be liable in damages for such revocation, modification, or order for renegotiation.
 E. The governor by executive order or the board overseeing the operation of the casino, subject to legislative approval either by vote or by mail ballot, or the legislature by Act or Resolution may negotiate a new casino operating contract.
Since it has been argued that R.S. 27:224 contains references to legislative approval of contract negotiations regarding the New Orleans land-based casino, you have requested our opinion as to whether the Governor can independently negotiate with Harrah's Jazz Company, the casino operator. It is your position that under the separation of powers doctrine the Governor possesses inherent powers as the state's chief executive, and that these powers are not subject to legislative oversight. Your letter suggests that we examine La. Const. Art. II, Sections 1 and 2, which provide that the Legislature does not have the authority to oversee the exercise of the inherent powers of the Governor.
We are unaware of any judicial proceedings or decisions pertaining to the unconstitutionality of R.S. 27:224. Furthermore, our research did not reveal any cases which have tested the constitutionality of a requirement that the Legislature approve actions taken by the Governor pursuant to executive order. Because of the legal presumption that all statutes are constitutional unless declared otherwise by a court of competent jurisdiction and this office's obligation to defend the constitutionality of statutes, this office is constrained to presume R.S. 27:224 to be constitutional. State in theinterest of J.A.V., 558 So.2d 414 (La. 1980); GulfOil Corporation v. State Mineral Board, 317 So.2d 576 (La. 1975).
Based on the foregoing, it is the opinion of this office that, in accordance with R.S. 27:224(D) the Governor must obtain legislative approval to set aside the contract or to orderthe Board to renegotiate with Harrah's. R.S. 27:224(D) does not give the Governor independent authority to enter into directrenegotiation of the Casino Operating Contract while it is in bankruptcy. The Governor can only order the Board to do so. Additionally, since the Casino Operating Contract is the subject of a bankruptcy proceeding and it is not a new contract, R.S.27:224(E) does not apply.
R.S. 27:244(C) is also pertinent to your first question as it is the only statute which addresses execution of the Casino Operating Contract. It provides:
 "The Casino Operating contract, when executed by the board and the applicant shall constitute the authority of the applicant to conduct the activities authorized by such contract." (Emphasis added)
Pursuant to this provision, the Board, as opposed to the Governor and/or the Legislature, should be signatory to the renegotiated contract. This authority was transferred to the Board by Act 7 of the 1996 First Extraordinary Session, the same session in which R.S. 27:224(D) and (E) were enacted.
We turn to the second question presented.
As you point out, R.S. 27:245(A) authorizes the Board to renegotiate the provisions of the casino operating contract if the casino operator is in bankruptcy.
With respect to renegotiation of the contract, R.S. 27:245(A) provides that the Board has the authority to:
 ". . . set aside or renegotiate the provisions of any casino operating contract of a casino operator who is voluntarily or involuntarily placed in bankruptcy, receivership, conservatorship, or similar status. The corporation may agree in writing to allow the casino operator to be placed in bankruptcy, receivership, conservatorship, or other similar status without setting aside, revoking or renegotiating the casino operating contract."
Clearly, no legislative approval or oversight is required by this section. Pursuant to R.S. 27:245(A), the Board is granted independent authority to renegotiate the casino operating contract in the event of a bankruptcy or a receivership.
We are aware that a number of legislators have raised the question of whether the provisions of R.S. 27:224 impliedly repealed the provisions of R.S. 27:245(A). A discussion of that issue is therefore pertinent herein.
The general rule of statutory interpretation when there are two sets of laws enacted purporting to govern the same subject matter can be succinctly stated as follows: all statutory provisions are to be given effect whenever possible. If acts can be reconciled by a fair and reasonable interpretation, it must be done. Repeal by implication is inappropriate if there is any other reasonable construction. It is only where there is a direct and irreconcilable conflict between them that resort may be had to such conflict-resolving rules as the last enacted statute prevailing over the first enacted statute or the more specific statute prevailing over the more general statute. See Atty. Gen. Op. 88-195, citing City of New Orleans v. Boardof Supervisors of Elections, 216 La. 116, 43 So.2d 237 (La., 1949); State in the Interest of Sapia, 397 So.2d 469
(La., 1981); and Hilton v. Hilton, 451 So.2d 90
(La.App. 3rd Cir., 1984) and other cases too numerous to cite here. See also Atty. Gen. Op. No. 87-459.
We note that the power given to the Board in what is now R.S.27:245(A) was included in the powers transferred by the Legislature to the new Board. If the Legislature had wanted to amend or repeal R.S. 4:645 [now R.S. 27:245], it could have done so instead of redesignating it as R.S. 27:245 and transferring this authority to the Board.
R.S. 27:224(D) and (E) were enacted pursuant to Act 58 of the First Extraordinary Session of 1996. Act 58 contained a proviso that the Act was not intended to change the law, that it was remedial and intended to clarify legislative intent. The provisions of R.S. 27:224(D) and (E) are previously quoted herein.
R.S. 27:245(A) addresses powers granted only to the Board when the casino operator is in bankruptcy while R.S. 27:224(D) addresses powers granted to the Governor with the approval of the Legislature or the Legislature alone when the casino operator is in bankruptcy. Significantly, the power granted to the Governor and/or the Legislature in R.S. 27:224(D) is not the power to renegotiate, but is instead the power to "set aside the contract or order the corporation to renegotiate."
R.S. 27:224(E) authorizes negotiation of a new contract for reasons other than bankruptcy. This provision provides that "the governor by executive order or the board overseeing the operation of the casino, subject to legislative approval either by vote or by mail ballot, or the legislature by Act or Resolution may negotiate a new casino operating contract." However, R.S.27:224(E) in no way impinges upon the Board's independent authority to renegotiate the contract in accordance with R.S.27:245(A). It provides a method for the Governor or the Legislature to act during the pendency of a bankruptcy proceeding when the Gaming Control Board cannot, will not, or has not.
It is our determination that R.S. 27:245(A) and R.S. 27:224(D) and (E) are not in conflict. As such R.S. 27:245(A) has not been impliedly replied.
In conclusion, it is the opinion of this office that the Governor does not have independent authority to renegotiate the contract under R.S. 27:224(D). Under R.S. 27:224(D) the Governor's sole authority in light of the pending bankruptcy is to issue an executive order subject to legislative approval, ordering the Gaming Control Board to renegotiate the contract. R.S. 27:224(E) is not applicable so there is no need to discuss what authority the Governor has to negotiate under that provision. It is our further opinion that pursuant to R.S. 27:244(C) and R.S.27:245(A), the Gaming Control Board has independent authority to renegotiate and execute the renegotiated casino operating contract.
I hope the foregoing is of assistance. Of course, you should not hesitate to contact me if my office can be of further assistance to you or the Legislature.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
RPI:EKK:RAM, JR:JMZB:ALN:jv
DATE RECEIVED: March 10, 1998 DATE RELEASED: March 16, 1998
RICHARD P. IEYOUB, ATTORNEY GENERAL