805 So.2d 159 (2002)
STATE in the Interest of L.C.B.
No. 2001-CJ-2441.
Supreme Court of Louisiana.
January 15, 2002.
Sherry P. Crain, Baton Rouge, Counsel for Applicant.
*160 Stephen A. Dixon, Robert E. Dille, Baton Rouge, Donald S. Wingerter, Baton Rouge, Lieu T. Vo, Counsel for Respondent.
KIMBALL, Justice.[*]
We granted certiorari to determine whether the juvenile court erred in ordering that a child adjudicated in need of care and placed in the custody of the Department of Social Services be moved from a noncertified placement approved by the Department to a certified foster home. For the following reasons, we conclude that the court was without authority to order the child's movement to a certified foster home and therefore reverse the court's order and remand the case to the juvenile court for further proceedings.

FACTS AND PROCEDURAL HISTORY
The minor child, L.C.B., was placed in the legal custody of the State of Louisiana, Department of Social Services, Office of Community Services ("OCS" or "the Department") by an oral instanter order issued by the Juvenile Court for the Parish of East Baton Rouge on August 21, 1999. On August 23, 1999, OCS filed a Verified Complaint/Affidavit in Support of an Instanter Order and the court, considering the verified complaint, found that L.C.B. was in need of care, that preventive services had been offered to no avail, that there was a substantial immediate danger which precluded preventive services as an alternative to removal, and that it was necessary that L.C.B. be taken into custody for his protection. Therefore, the court ordered that L.C.B. be placed in the custody of OCS pursuant to La. Ch.C. art. 619.[1] On August 24, 1999, the court held a continued custody hearing in which it was ordered that L.C.B. remain in the custody of OCS pending further orders of the court. Since August 21, 1999, L.C.B. has remained in the legal custody of OCS.
On October 4, 1999, the District Attorney filed a petition seeking to have L.C.B. *161 declared in need of care due to the abuse and neglect of his mother. Subsequently, on March 21, 2000, a hearing was held wherein L.C.B. was adjudicated a child in need of care.
Beginning September 14, 1999, OCS formulated, and the court approved, a series of case plans in which the permanent goal for L.C.B.'s family was reunification. During that time, L.C.B. was placed in the certified foster home of Mr. and Mrs. D. Reports prepared by OCS for various hearings during that time indicate that L.C.B. was hospitalized on different occasions for psychiatric and behavioral problems.
On August 3, 2000, a review hearing pursuant to La. Ch.C. arts. 692 and 702 was held and the case plan approved by the court changed the permanent plan to adoption. Specifically, the juvenile court found that inadequate progress had been made toward alleviating the causes necessitating L.C.B.'s placement in foster care and that reunification was impossible at that time. Therefore, the court rendered judgment decreeing that the plan for permanent placement of L.C.B. was adoption. At this time, L.C.B. was still placed in the certified foster home of Mr. and Mrs. D.
A case plan dated January 10, 2001 indicated for the first time that L.C.B.'s father was Mr. C. and that Mr. C. desired custody of L.C.B.[2] Additionally, the plan stated that OCS began exploring relative placement with transfer of custody to a relative. The plan recited that Mr. C. visited with L.C.B. beginning in November, 2000, and that a home study "confirmed suitable housing and care" for L.C.B. The home study was conducted on the home of Ms. W., L.C.B.'s paternal grandmother with whom Mr. C. lived. Finally, the case plan reported that on January 10, 2001, L.C.B. would begin a thirty-day trial placement with his father and paternal grandmother.[3]
Following a review hearing on May 3, 2001, the juvenile court made a factual finding that OCS had not made reasonable efforts to achieve the permanent plan of adoption and refused to approve the January 10, 2001 case plan as to L.C.B. on the grounds that the plan did not take into account the permanent plan of adoption which had previously been ordered for L.C.B. The court reiterated that adoption was in L.C.B.'s best interest.
On June 27, 2001, L.C.B.'s CASA volunteer wrote a letter to the juvenile court requesting a status conference to address the following issue relating to L.C.B.:
At the May 3, 2001 692/702 Hearing, "ADOPTION" was made the permanent plan for L.C.[B]. L.C.[B.] is currently in the custody of Mr. [C]. OCS informed my CASA supervisor that the New Orleans OCS office would not certify Mr. [C.] as a placement for L.C.[B]. Also, due to Mr. [C's] work schedule, living arrangements, and lack of transportation, L.C.[B.] has not received any academic assistance since April 2001. All parties in this case agree that one of the primary issues in L.C.[B.'s] behavior problems is the fact that he is two years behind academically. This is primarily due to the instability in L.C.[B.]'s life. Also, L.C.[B.] has not visited with his siblings, except at court, in five (5) months. I am requesting that L.C.[B.] be moved from the non-certified home of [Mr. C.] to the certified home of Mr. & *162 Mrs. [D]. This would give L.C.[B.] the opportunity to be with his siblings and be enrolled in an academic program to better prepare him for school this fall. For L.C.[B.] not to receive any academic services for the entire summer is a great disservice to this child.
The status conference requested by this letter was held August 2, 2001, at which time L.C.B. was still placed in Mr. C.'s home. The court stated that it called the status conference because no proceedings for the certification for adoption of L.C.B. had taken place in three months. The court was particularly concerned that school was about to start and wanted L.C.B. established in his placement prior to the beginning of the school year. The court asked OCS to explain why, three months after it had set a permanent plan of adoption, L.C.B. was still placed in a home that was not certified as a foster or adoptive placement. OCS responded that it was working towards achieving the adoption of L.C.B. by attempting to determine whether Mr. C. could qualify as an adoptive parent in light of his desire to adopt L.C.B. and that it had decided that L.C.B. would remain with Mr. C. until the agency could determine whether Mr. C. might qualify as an adoptive parent for L.C.B. OCS reported that a decision on this matter, which appeared to hinge on whether Mr. C. could obtain a waiver of his criminal record, was expected by August 30, 2001. After hearing arguments, the juvenile court found that OCS had failed to make reasonable efforts to achieve the permanent plan of adoption and ordered that L.C.B. be moved within five days to a certified foster home.
OCS filed a notice of intent to seek supervisory writs to the first circuit and the juvenile court signed an order setting a return date for the filing of the writ application. The juvenile court also denied the State's request that it stay its judgment pending final resolution of the application for supervisory writs. The court of appeal denied OCS's request for an emergency stay and denied supervisory writs. In denying writs, the court of appeal noted OCS had made no showing that the juvenile court clearly abused its discretion in ordering that L.C.B. be moved from a noncertified home to a certified foster home "when it did not order [OCS] to move the child to a particular placement setting." State of Louisiana in the Interest of L.C.B., 01-1838 (La.App. 1 Cir. 8/9/01) (unpublished).
This court granted certiorari to consider the legal issue of whether the juvenile court went beyond its statutory authority when it ordered that L.C.B. be placed in a certified foster home. State in the Interest of L.C.B., 01-2441 (La.9/21/01), 797 So.2d 55.

LAW AND DISCUSSION
OCS argues that La. Ch.C. art. 672(A) gives it the sole authority to make placement determinations for children assigned to its custody. Therefore, OCS contends, the juvenile court erred in ordering it to move L.C.B. from a placement setting it arranged and approved to a certified foster home. For the reasons that follow, we find that the juvenile court's order did, in fact, go beyond the authority granted to the court by the legislature.
At the outset, we note that the purpose of Title VI of the Children's Code, entitled "Child in Need of Care" and applicable to these proceedings, is "to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others...." La. Ch.C. art. 601. Furthermore, the health, safety, and best interest of the child shall be the paramount *163 concern in all proceedings under this Title. Id.
Article 672(A) of the Louisiana Children's Code provides:
When custody of a child adjudicated in need of care is assigned to the Department of Social Services, the child shall be assigned to the custody of the department rather than to a particular placement setting. The department shall have sole authority over the placements within its resources and sole authority over the allocation of other available resources within the department for children judicially committed to the department's custody.
The plain language of this statute clearly provides that when the court assigns custody of a child adjudicated in need of care to OCS, the Department has "sole authority" over the placements within its resources of those children.
In State in the Interest of Sapia, 397 So.2d 469 (La.1981), this court interpreted the source provision of this article to mean that once the court assigns custody of a child in need of care to the Department of Health and Human Resources, the predecessor of the Department of Social Services, the Department has the authority to select the appropriate placement facility and to place the child accordingly. In reaching this decision, this court explained that
[o]nce the judge determines the custody of the child should be assigned to the [Department], and so assigns custody of the child, the Department then has the authority to determine where the child should be placed. If the court determines that the child is not being properly cared for it may remove custody from the Department and place it elsewhere.
Id. at 473. Article 672(A) codifies the principle announced in Sapia that the Department alone has the right to determine the placement of children in need of care entrusted to its custody. See 1997 Comment to La. Ch.C. art. 672 ("In accordance with [Sapia], the juvenile court is without power to designate a particular treatment or placement when it assigns custody of a child to a state agency.").
Article 672(A), however, cannot be interpreted in a vacuum and must be read in conjunction with other statutes that make up the statutory scheme governing child in need of care proceedings. Article 673 provides that once a child enters the custody of a child care agency, the custodian shall develop a case plan detailing the custodian's efforts toward achieving a permanent placement for the child within a specified time period. Article 677 provides for judicial review of the case plan as follows:
A. At the disposition hearing, the court shall consider the content or implementation of the case plan and any response filed concerning it. At any other hearing held subsequent to the filing of the case plan, on its own motion or upon motion of any party for good cause shown, the court may consider the content or implementation of the case plan or of any response filed concerning it.
B. If no party files a written response objecting to the case plan and the court finds the plan protects the health and safety of the child and is in the best interest of the child, the court shall render an order approving the plan.
C. If the court does not approve the case plan, it shall enter specific written reasons for finding that the plan does not protect the health and safety of the child or is otherwise not in the best interest of the child.
Similarly, Articles 688 and 690 provide that the custodial agency shall file a case review report with the court which shall review the status of the child and address, *164 among other things, the continuing necessity for and appropriateness of the child's placement, and the extent of compliance with the case plan. Article 692 provides for periodic review hearings by the court. Article 700 provides that at the conclusion of the case review hearing, the court may:
(1) Approve the plan as consistent with the health and safety of the child and order compliance by all parties. The court shall inform the parents that:
(a) It is their obligation to cooperate with the department, comply with the requirements of the case plan, including their duty to keep the department apprised of their current address, and to correct the conditions requiring the child to be in care.
(b) A termination of parental rights petition may be filed based on their failure to comply with the case plan, failure to make significant measurable progress toward achieving case plan goals and to correct the conditions requiring the child to be in care, or on any other ground authorized by Article 1015.
(2) Find that the case plan is not appropriate, in whole or in part, based on the evidence presented at the contradictory hearing and order the department to revise the case plan accordingly.
The 1991 Comment to art. 700 provides that this article is "intended to clarify the role of the court vis-a-vis the role of the department as set forth in Article 672." The Comment goes on to explain that "[t]he court is specifically entitled to accept or reject the department's plan, based on the evidence presented, but is not authorized to revise the plan itself. The department remains responsible for revision of the case plan."
Finally, La. Ch.C. art. 702 provides that the court shall conduct a permanency hearing within a specified period of time and shall determine the permanent plan for the child that is most appropriate and in the best interest of the child in accordance with specified priorities of placements. Additionally, art. 702 provides that the court shall determine whether the department has made reasonable efforts to finalize the child's placement in an alternative safe and permanent home in accordance with the child's permanent plan. The 1999 Comment to this article explains that the purpose of the permanency hearings is to "provide for judicial review and oversight of department planning and decision [-]making on behalf of children who have been removed from their parents' custody."
When reading all of these provisions as a whole, it becomes clear that the legislature has attempted to achieve a delicate balance between the broad authority of review reserved to the courts and the specific powers given to OCS. The foregoing provisions define the juvenile court's overarching role in supervising and reviewing the progression of the child's case. These provisions dictate that the juvenile court retains the ultimate authority over a child's placement. See State in the Interest of Jennifer W., 485 So.2d 504, 506 (La.1986) and Sapia at 474 (both recognizing that statutes which gave the courts the authority to review the status of children placed in the custody of the Department allowed the courts to have the ultimate authority over a child's placement). However, pursuant to Article 672(A), the Department has the sole authority to determine the specific placements of children committed to its custody. Therefore, under the scheme imposed by these provisions, the court may review the case plan and either approve the plan or reject it and order the Department to revise the plan accordingly. It cannot, however, revise the plan itself or order any particular *165 placements of children adjudicated in need of care and placed in the Department's custody.
In the instant case, the juvenile court went beyond merely rejecting the Department's plan as authorized by La. Ch.C. art. 700. L.C.B. was a child adjudicated in need of care and placed in the custody of OCS. Pursuant to La. Ch.C. art. 672(A), OCS therefore had the sole authority to determine the particular placement setting for L.C.B. By ordering OCS to move L.C.B. to a certified foster home, the court effectively determined a particular placement for L.C.B., thereby revising the case plan itself in violation of La. Ch.C. arts. 672(A) and 700. The court therefore went beyond its authority by making a placement choice the Department had the "sole authority" to make.
Under Article 702, it was entirely proper for the juvenile court to determine that L.C.B.'s permanent plan was adoption and that the Department had not made reasonable efforts to finalize the child's placement in a permanent home in accordance with the permanent plan. However, although the court was entitled to disapprove the case plan and declare that the Department had neither followed the plan nor made reasonable efforts to achieve the permanent plan, it could not unilaterally change the plan as it attempted to do.
Once L.C.B. was moved to the home of Mr. C. and the court determined that the Department was not making reasonable efforts to comply with its permanency planning requirements, the court's recourse under La. Ch.C. art. 712 was to subpoena agency witnesses to testify regarding the failure to comply, order the agency to show cause why a contempt order should not issue, order that the agency not seek federal reimbursement for the cost of the child's care, submit a report of noncompliance to appropriate state and federal agencies, or refer the agency representative found responsible for the failure to comply to the appropriate Department personnel for administrative reprimand or other administrative sanctions. Additionally, of course, the court could have removed custody from the Department as provided by Sapia. While it does appear from the record in this case that OCS may have ignored the court's orders regarding L.C.B.'s placement, the statutory scheme at issue mandates that the court should have considered, among other things, holding the agency or an appropriate representative in contempt in this juvenile proceeding rather than ordering a particular placement for the child.

CONCLUSION
Under the statutory scheme in place for children adjudicated in need of care and placed in the custody of OCS, the court retains the ultimate authority over a child's placement and may approve or reject a case plan submitted by the Department, but it may not revise the plan or make any particular placements itself. In the instant case, the juvenile court's order that L.C.B., a child adjudicated in need of care and placed in the custody of OCS, be moved to a certified foster home was in violation of La. Ch.C. art. 672(A) as it made a particular placement choice OCS alone was entitled to make. Therefore, the court's order that L.C.B. be moved to a certified foster home is reversed and the case is remanded to the juvenile court for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] La. Ch.C. art. 619, entitled "Instanter orders of custody," provides:

A. A peace officer, district attorney, or employee of the local child protection unit of the department may file a verified complaint alleging facts showing that there are reasonable grounds to believe that the child is in need of care and that emergency removal is necessary to secure the child's protection.
B. The court shall determine whether reasonable efforts have been made by the department to prevent or eliminate the need for the child's removal, including whether the department has requested a temporary restraining order pursuant to Article 617 or a protective order pursuant to Article 618. In making and determining reasonable efforts, the child's health and safety shall be the paramount concern. However, the court may authorize the removal of the child even if the department's efforts have not been reasonable.
C. If the court determines that the child's welfare cannot be safeguarded without removal, the court may issue an instanter order directing that the child be taken into the custody of the state.
D. An instanter order shall be executed by either an employee of the local child protection unit or any peace officer having territorial jurisdiction over the child.
E. Any peace officer having territorial jurisdiction over the child is authorized to serve a summons upon a parent or caretaker, commanding him to appear at court for a continued custody hearing. The summons shall expressly notify the parent or caretaker that the court may issue a binding order in his absence if he fails to appear. A copy of the summons shall be filed in the record as proof of service. An employee of the local child protection unit shall provide written notice to the parents or caretaker of the date, time, and location of the continued custody hearing.
[2] Previously, it had been reported that Mr. L. was the father of L.C.B., but paternity testing indicated that Mr. L. was not L.C.B.'s biological father.
[3] It was later determined through paternity testing that Mr. C. was not L.C.B.'s biological father.